1 | Susan L. Oliver (SBN# 160902)
**WHITE, OLIVER & AMUNDSON**
2 | A Professional Corporation
550 West C Street, Suite 950
3 | San Diego, California 92101
Telephone: (619) 239-0300
4 | Facsimile: (619) 239-0344

5 | Attorneys for Defendant Ira Grossman

6

7

8 | UNITED STATES DISTRICT COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

10

11 | JOHN ESPINOZA, an individual )  CASE NO. 07 CV 2218 LAB (RBB)
 )
12 | Plaintiff, )  **MEMORANDUM OF POINTS AND**
 )  **AUTHORITIES IN SUPPORT OF**
 )  **DEFENDANT IRA GROSSMAN'S ANTI-**
13 | v. )  **SLAPP MOTION TO STRIKE**
 )  **PLAINTIFF'S COMPLAINT**
14 | )  **[C.C.P. § 425.16]**
CITY OF IMPERIAL, a public entity; MIGUEL)
15 | COLON, an individual; IRA GROSSMAN, an)  **[ORAL ARGUMENT REQUESTED]**
individual; and DOES 1-50, inclusive )
16 | )  **Date:      June 2, 2008**
Defendants. )  **Time:      11:15 a.m.**
17 | _____ )  **Judge:     Hon. Larry A. Burns**
                                           **Ctrm:      9**

18 | ///

19 | ///

20 | ///

21 | ///

22 | ///

23 | ///

24 | ///

25 | ///

26 | ///

27 | ///

28 | ///

## TABLE OF CONTENTS

Pages

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  AUTHORITY FOR MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. APPLICATION OF THE ANTI-SLAPP STATUTE . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  PLAINTIFF'S ALLEGATIONS AGAINST DR. GROSSMAN ARE WITHIN
     THE SCOPE OF THE ANTI-SLAPP STATUTE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.   Dr. Grossman's Speech Made Before and in Connection with Official Proceedings
          Regarding Plaintiff's Continued Employment as a Police Officer is Protected Under
          Sections 425.16(e)(1) and (e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V.   PLAINTIFF CANNOT MEET HIS STATUTORY BURDEN OF PROOF . . . . . . . . . . . 5

     A.   Plaintiff's Claims Against Dr. Grossman are Barred by Civil Code 47(b) . . . . . . . 6

          1.   Reports Regarding the Fitness of a Police Officer are Absolutely
               Privileged Under Section 47(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          2.   The 47(b) Privilege Applies to the Reports of Experts in
               Truth-Seeking Inquiries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

          3.   Dr. Grossman's Communications Are Also Protected by the "Common
               Interest" Privilege of Section 47(c) . . . . . . . . . . . . . . . . . . . . . . . . . 9

          4.   *Pettus v. Cole* Does Not Apply Based On The Allegations of Plaintiff's
               Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VI.  DR. GROSSMAN IS ENTITLED TO FEES AND COSTS INCURRED
     IN RESPONDING TO PLAINTIFF'S COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . 14

VII. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

Pages

## CASES

*Adams v. Superior Court,*
    2 Cal. App. 4th 521, 529 (Cal. Ct. App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Averill v. Superior Court,*
    42 Cal. App. 4th 1170 (Cal. Ct. App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Brody v. Montalbano,*
    87 Cal.App.3d 725, 732-33 (Cal. Ct. App. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Chavez v. Mendoza,*
    94 Cal. App. 4th 1083, 1089 (Cal. Ct. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Church of Scientology of California v. Wollersheim,*
    42 Cal. App. 4th 628, 646-647 (Cal. Ct. App. 1996) . . . . . . . . . . . . . . . . . . . . . 2, 14

*Computerxpress, Inc. v. Jackson,*
    93 Cal.App.4th 993,1009 (Cal. Ct. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Crowley v. Katleman,*
    8 Cal.4th 666, 695 (Cal. Ct. App. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Dealertrack, Inc. v. Huber,*
    460 F. Supp.2d 1177 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Dowling v. Zimmerman,*
    85 Cal. App.4th 1400 (Cal Ct. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14

*eCash Technologies, Inc. v. Guagliardo,*
    210 F. Supp. 2d 1138 (C.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*Equilon Enterprises v. Consumer Cause, Inc.,*
    29 Cal. 4th 53, 68 n.5 (Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Flores v. Emerich & Fike,*
    416 F. Supp.2d. 885 (E.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Fox Searchlight Pictures, Inc. v. Paladino,*
    89 Cal. App. 4th 294, 305-307 (Cal. Ct. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . 2

*Gootee v. Lightner,*
    224 Cal.App.3d 587 (Cal. Ct. App. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Howard v. Drapkin,*
    222 Cal.App.3d 843 (Cal. Ct. App. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Jackson v. Mills Corp.,*
    2007 WL 2705215 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kashian v. Harriman,*
    98 Cal. App. 4th 892, 913 (Cal. Ct. App. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Katz v. Rosen,*
    48 Cal.App.3d 1032 (Cal. Ct. App. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ketchum v. Moses,*
    24 Cal. 4th 1122 (Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kim v. Walker,*
    208 Cal.App.3d 375, 383 (Cal. Ct. App. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Lesperance v. North Am. Aviation, Inc.,*
    217 Cal.App.2d 336, 341 (Cal. Ct. App. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Martin v. Kearney,*
    51 Cal.App.3d 309, 312 (Cal. Ct. App. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mary M. v. City of Los Angeles,*
    54 Cal.3d 202, 206-207 (Cal. Ct. App. 1991 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Matson v. Dvorak,*
    40 Cal. App. 4th 539, 548 (Cal. Ct. App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*McClatchy Newspapers, Inc. v. Superior Court,*
    189 Cal. App. 3d 961, 970 (Cal. Ct. App. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Metabolife International, Inc. v. Wornick,*
    213 F. Supp. 2d 1220, 1223 (S.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Navarro v. IHOP Properties, Inc.,*
    134 Cal. App. 4th 834, 844 (Cal. Ct. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Nicosia v. De Rooy,*
    72 F. Supp. 2d 1093, 1110 (N.D. Cal.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Pacific Gas & Electric Co. v. Bear Stearns Co.,*
    50 Cal. 3d 1118, 1132 (Cal. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Paul for Council v. Hanyecz,*
    85 Cal. App. 4th 1356 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Pettitt v. Levy,*
    28 Cal.App.3d 484, 490-91 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pettus v. Cole,*
    49 Cal.App.4th 402 (Cal. Ct. App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Pfeiffer Venice Properties v. Bernard,*
    101 Cal. App. 4th 211 (Cal. Ct. App. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Robertson v. Rodriguez,*
    36 Cal. App. 4th 347, 362 (Cal. Ct. App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rohde v. Wolf,*
    154 Cal.App.4th 28, 35 (Cal. Ct. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Shaddox v. Bertani,*
    110 Cal App.4th 1406 (Cal. Ct. App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 12, 13

*Shekhter v. Financial Indemnity Company,*
    89 Cal. App. 4th 141, 151 (Cal. Ct. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

*Silberg v. Anderson,*
    50 Cal. 3d 205, 213 (Cal. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Taus v. Loftus,*
    40 Cal.4th 683 (Cal. Ct. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Thomas v Fry's Electronics, Inc.,*
    400 F.3d 1206 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Tiedemann v. Superior Court,*
    83 Cal.App.3d 918, 924-926 (Cal. Ct. App. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Williams v. Taylor,*
    129 Cal.App.3d 745, 753 (Cal. Ct. App. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

*Wilton v. Mountain Wood Homeowner's Assn,*
    18 Cal. App.4th 565 (Cal. Ct. App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*///*
*///*

1
2

<u>STATUTES</u>

3    42 U.S.C. § 12112(d)(4)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

4    California Civil Code section 47 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5

6    California Civil Code section 47(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

7    California Civil Code section 47(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-8, 13

8    California Civil Code section 47(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 10, 13

9    California Civil Code section 56.10(c)(8)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

10    California Code of Civ. Proc. section 425.16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-4

11    California Code of Civ. Proc. section 425.16(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

12
13

<u>OTHER</u>

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I. INTRODUCTION

Plaintiff John Espinoza was terminated from his position as a police officer with the CITY OF IMPERIAL ("City") following a psychological evaluation which found him unfit for duty. He now alleges defamation, invasion of privacy and intentional infliction of emotional distress against Defendant IRA GROSSMAN ("Dr. Grossman"), the psychologist retained by City to perform the evaluation. Dr. Grossman, in conducting his evaluation of Plaintiff, and in forwarding his fitness report to City and Colon was properly making communications in connection with official proceedings related to investigation of Plaintiff's fitness and potential termination of his employment from the City. These communications constitute precisely the type of free speech that is protected by California Code of Civ. Proc. Section 425.16. Accordingly, Dr. Grossman files this instant Motion to Strike pursuant to the California Anti-SLAPP statute.

# II. AUTHORITY FOR MOTION

The California Legislature enacted the Anti-SLAPP statute to address a concern that too many lawsuits had created a chilling effect on the exercise of the constitutional right to free speech. (*Dowling v. Zimmerman*, 85 Cal. App.4th 1400 (Cal Ct. App. 2001).) The Anti-SLAPP statute is intended to provided a fast and inexpensive "unmasking" and potential dismissal of actions that implicate a defendant's constitutional rights and privileges. (*Id.*) The statute permits a defendant to respond to such a lawsuit with a special motion to strike, early in the litigation, which effectively compels **the plaintiff** to produce sufficient evidence to show **both**: 1) the complaint is legally sufficient; and 2) the complaint is supported by a sufficient prima facie showing of facts to sustain favorable judgment if the evidence submitted thereby is credited. *(Matson v. Dvorak*, 40 Cal. App. 4th 539, 548 (Cal. Ct. App. 1995).) If the plaintiff cannot meet these prerequisites, the complaint is stricken.

The Anti-SLAPP statute was intended to have a **broad** application. (*Averill v. Superior Court*, 42 Cal. App. 4th 1170 (Cal. Ct. App. 1996).) In fact, in 1997, the Legislature amended this statue to **expressly *require*** its broad interpretation by the courts. (See Cal. Code Civ. Proc. § 425.16(a) ["... this section shall be construed broadly"].) This express statutory requirement governs to date.

Finally, it should be noted that California's Anti-SLAPP statute applies in federal court. (*Dealertrack, Inc. v. Huber*, 460 F. Supp.2d 1177 (C.D. Cal. 2006); *Thomas v Fry's Electronics, Inc.*,

1  400 F.3d 1206 (9th Cir. 2005).)

2  ### III. APPLICATION OF THE ANTI-SLAPP STATUTE

3  The Anti-SLAPP statute requires this Court to take a two-step approach:

4  First, this Court must determine whether Plaintiff's Complaint implicates Dr. Grossman's free

5  speech and petition rights, within the meaning of, and as defined by, the express terms of any of the

6  provisions within Section 425.16, subsection (e). It is Dr. Grossman's burden of proof to show that

7  Plaintiff's "cause of action arises from the exercise of [his] free speech or petition activity," as such is

8  defined by the Anti-SLAPP provisions. (*Church of Scientology of California v. Wollersheim*, 42 Cal.

9  App. 4th 628, 646-647 (Cal. Ct. App. 1996) [emphasis omitted], *overruled on other grounds in Equilon*

10  *Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 68 n.5 (Cal. 2002); *see also*, Cal. Code Civ. Proc.

11  § 425.16(e) [defining the types of speech protected thereby].)

12  Under this burden, Dr. Grossman is *not* required to establish that his actions are constitutionally

13  protected under the First Amendment as a matter of law; rather, he must only show that Plaintiff's claims

14  arise from the speech of Dr. Grossman made in furtherance of his rights of free speech and/or petition,

15  as defined by subdivision (e) of the statute itself. (*Paul for Council v. Hanyecz*, 85 Cal. App. 4th 1356

16  (2001), *overruled on other grounds in Equilon*, 29 Cal. 4th at 68 n.5; *see also, Chavez v. Mendoza*, 94

17  Cal. App. 4th 1083, 1089 (Cal. Ct. App. 2001).) Further, Dr. Grossman is *not* required to show

18  Plaintiff's motive in bringing the present matter, i.e., to "chill" his speech or otherwise, in order to

19  invoke the protection of the Anti-SLAPP statute. *(Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal.

20  App. 4th 294, 305-307 (Cal. Ct. App. 2001).) Moreover, that the alleged speech has purportedly

21  concluded, and is not ongoing, does *not* affect the applicability of Section 425.16. (*Chavez*, 94 Cal.

22  App. 4th at 1090.)

23  Second, if the court finds that Plaintiff's Complaint does implicate Dr. Grossman's rights under

24  the Anti-SLAPP statute, **Plaintiff** is required to show that there is a probability that he will prevail on

25  his claim. (*Shekhter v. Financial Indemnity Company*, 89 Cal. App. 4th 141, 151 (Cal. Ct. App. 2001).)

26  In order to satisfy this second prong, Plaintiff must demonstrate that the complaint is **both**, 1) legally

27  sufficient, and 2) supported by a sufficient prima facie showing of facts to demonstrate the probability

28  that he will be the prevailing party in the litigation. (*Id.* at 150-151.) In demonstrating the second prong,

1    i.e., a probability of prevailing at trial, Plaintiff must establish that there are no constitutional or statutory

2    defenses that apply to protect Dr. Grossman's conduct. (*eCash Technologies, Inc. v. Guagliardo*, 210

3    F. Supp. 2d 1138 (C.D. Cal. 2001).)  In fact, where such defenses are shown to exist in favor of the

4    defendant, the Plaintiff must bring forth evidence to actually **negate** those defenses. (*Id.*)

5         When assessing the probability a plaintiff will prevail at trial, the court shall consider the

6    pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense

7    is based, as well as relevant materials submitted by way of a request for judicial notice. (Cal. Civ. Proc.

8    Code § 425.16(b)(2).)  However, the trial court may only consider evidence that will be **admissible** at

9    trial. (*Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1110 (N.D. Cal.1999).)  Accordingly, this Court must

10   determine whether or not the evidence offered by Plaintiff, if any, is first, admissible, and second,

11   sufficient to meet the requisite burden, in deciding whether the Complaint is properly stricken under the

12   Anti-SLAPP statue.

13   **IV.  PLAINTIFF'S ALLEGATIONS AGAINST DR. GROSSMAN ARE WITHIN**

14   **THE SCOPE OF THE ANTI-SLAPP STATUTE**

15        Plaintiff's lawsuit arises out of the following events: He was terminated from his position as a

16   police officer with the City of Imperial ("City") following a psychological evaluation by Dr. Grossman,

17   which found him unfit for duty. The essence of Plaintiff's lawsuit against Dr. Grossman is that Dr.

18   Grossman made statements in a psychological report to the City and its police chief, Colon, regarding

19   Plaintiff's lack of fitness to continue to serve as a police officer.  Specifically, Dr. Grossman is being

20   sued for his role in making communications to public entity related to official proceedings regarding

21   Plaintiff's continued employment as a police officer.

22        Also, as alleged in Plaintiff's complaint, Plaintiff has "mental disabilities and/or medical

23   conditions" (Complaint, ¶ ¶ 57, 67) which he asserts made him eligible for an accommodation under the

24   Americans with Disabilities Act (ADA) (Complaint ¶¶ 44-53).   Under the ADA, an employer is

25   permitted to require a medical examination as to whether such employee is an individual with a

26   disability or as to the nature and severity of the disability. (*See* 42 U.S.C. § 12112(d)(4)(A).)  In light

27   of the allegations of the complaint, Dr. Grossman's communications, as set forth in his report, can also

28   be construed as being made in accordance with the exercise of legally protected rights.

1    As discussed more fully below, the alleged speech and/or conduct of Dr. Grossman falls squarely

2    within the protection of the Anti-SLAPP statute.  (Cal. Civ. Proc. Code § 425.16(e)(1) and (2).)

3    **A.    Dr. Grossman's Speech Made Before and in Connection with Official Proceedings**

**Regarding Plaintiff's Continued Employment as a Police Officer  is Protected Under**

4    **Sections  425.16(e)(1) and (e)(2).**

5    The first two categories of speech afforded protection under the Anti-SLAPP statute are those

6    made "before" or "in connection with" a legislative, executive, or judicial proceeding, or any other

7    official proceeding authorized by law.  (Cal. Civ. Proc. Code § 425.16(e)(1) and ( 2).)  In the spirit of

8    the mandatory "broad" interpretation of the Anti-SLAPP statute, any speech made in connection with

9    the stated proceedings falls within the protection of Section 425.16.  In fact, "the California Supreme

10   Court has observed that the term 'official proceeding' 'has been interpreted broadly to protect

11   communications to and from *governmental* officials *which may precede the initiation of formal*

12   *proceedings.*'" (*Computerxpress, Inc. v. Jackson*, 93 Cal.App.4th 993,1009 (Cal. Ct. App. 2001); *see*

13   *also, Rohde v. Wolf*, 154 Cal.App.4th 28, 35 (Cal. Ct. App. 2007) ["Just as communications preparatory

14   to or in anticipation of the bringing of an action or other official proceeding are within the protection of

15   the litigation privilege of Civil Code section 46, subdivision (b), such statements are equally entitled to

16   the benefits of section 425.16"].)  Thus, communications to a public entity or agency "designed to

17   prompt action by that agency is a much a part of the 'official proceeding' as a communication made after

18   the proceedings had commenced."  (*Kim v. Walker*, 208 Cal.App.3d 375, 383 (Cal. Ct. App. 1989).)[1]

19   In the instant case, Dr. Grossman's communications were made in connection with official

20   proceedings by the City regarding Plaintiff's continued employment as a police officer.  The City

21   engaged Dr. Grossman to evaluate Plaintiff's fitness to serve as police officer preparatory to the

22   initiation of termination proceedings if the evaluation showed that Plaintiff was unfit.  (Complaint ¶ 13,

23   14, 15.)  Dr. Grossman's actions/communications were intended to prompt action by the City (to

24   terminate Plaintiff) if he was deemed to be unfit.  Not only were Dr. Grossman's communications made

25

26

27   [1]California appellate courts have found the following statements/communications to be made in connection with "official proceedings" and thus within the ambit of California's anti-SLAPP statute:  (1) statements to investigative officers regarding a policeman's conduct. (*Williams v. Taylor*, 129 Cal.App.3d 745, 753 (Cal. Ct. App. 1982); (2) communications

28   between parents and school board (*Brody v. Montalbano*, 87 Cal.App.3d 725, 732-33 (Cal. Ct. App. 1978); and (3) statements to IRS agents investigating tax fraud (*Tiedemann v. Superior Court*, 83 Cal.App.3d 918, 924-926 (Cal. Ct. App. 1978).

1   in contemplation of official termination proceedings, the communications themselves were expressly

2   authorized by law. (See Cal. Civil Code section 56.10(c)(8)(B) [disclosures regarding a person's fitness

3   to perform his or her present employment is authorized by law]; *Shaddox v. Bertani*, 110 Cal App.4th

4   1406 (Cal. Ct. App. 2003) [reports regarding the fitness for duty of police officers are authorized by

5   law].

6         Alternatively, and as an additional basis for application of the Anti-SLAPP statute, is the fact that

7   a psychological examination of Plaintiff was warranted based upon Plaintiff's claims that he had "mental

8   disabilities" and thus was a "qualified individual with a disability" within the ambit of the ADA.

9   Reports following a medical examination regarding the nature and extent of the disability claimed by

10  the Plaintiff are made in accordance with the exercise of legally protected rights (see 42 U.S.C. §

11  12112(d)(4)(A)) and in anticipation of judicial or quasi-judicial proceedings.   It is well-established in

12  California law that the absolute privilege afforded by Civil Code section 47(b) extends to

13  communications made in anticipation of litigation (*Flores v. Emerich & Fike*, 416 F. Supp.2d. 885 (E.D.

14  Cal. 2006).   Morever, the existence of an alternative to litigation (such as proceedings before

15  California's Department of Fair Employment and Housing of the Federal Equal Opportunity

16  Commission) does not necessarily eliminate the 47(b) privilege. (*See e.g., Wilton v. Mountain Wood*

17  *Homeowner's Assn*, 18 Cal. App.4th 565 (Cal. Ct. App. 1993).)

18        Simply stated, all of the alleged communications attributed to Dr. Grossman, by and through

19  Plaintiff's Complaint, fall within the ambit of the Anti-SLAPP statute.

20        **V.  PLAINTIFF CANNOT MEET HIS STATUTORY BURDEN OF PROOF**

21        To satisfy this second prong of the Anti-SLAPP statute, Plaintiff must demonstrate his Complaint

22  is **both**, 1) legally sufficient, and, 2) supported by a prima facie showing of facts to demonstrate a

23  probability of prevailing in the litigation. (*Shekhter*, 89 Cal. App. 4th at 151.)  Plaintiff must establish

24  there are no constitutional or statutory defenses that apply to protect Dr. Grossman's statements. (*eCash*

25  *Technologies*, 210 F. Supp. 2d at 1138.)

26        Here, it is **certain** that Plaintiff cannot show a probability of prevailing at trial because Dr.

27  Grossman has absolute immunity from Plaintiff's claims because those claims are absolutely privileged

28  under California Civil Code section 47(b) and qualifiedly privileged under section 47(c).  As a result,

1  Plaintiff cannot meet his burden of proof under the Anti-SLAPP statute as a matter of law.

2  **A.    Plaintiff's Claims Against Dr. Grossman are Barred by Civil Code 47(b)**

3  Plaintiff's Complaint should be dismissed because any statements made by Dr. Grossman in his

4  fitness report are protected by the privileges afforded by California Civil Code section 47.[2]    The

5  litigation privilege is *absolute* and applies to any communication that has "some relation" to a judicial

6  or official proceeding. (*Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (Cal. Ct. App. 2002).) Courts

7  apply the litigation privilege to judicial, quasi-judicial, and other official proceedings because "the

8  external threat of liability is destructive ... and inconsistent with the effective administration of justice."

9  *(Silberg v. Anderson*, 50 Cal. 3d 205, 213 (Cal. 1990), quoting *McClatchy Newspapers, Inc. v. Superior*

10  *Court*, 189 Cal. App. 3d 961, 970 (Cal. Ct. App. 1987).)

11  Importantly, although it was originally enacted in response to defamation claims, (*Kashian*, 98

12  Cal. App. 4th at 913), the absolute litigation privilege now "applies to *any* action except one for

13  malicious prosecution." *(Pacific Gas & Electric Co. v. Bear Stearns Co.*, 50 Cal. 3d 1118, 1132 (Cal.

14  1990) [emphasis added].) (*See, e.g., Silberg*, 50 Cal. 3d at 213 [disapproving of lower appellate court

15  decisions that allowed certain tort actions, other than malicious prosecution, to proceed on the basis of

16  an "interest[s] of justice" exception; *Navarro v. IHOP Properties, Inc.*, 134 Cal. App. 4th 834, 844

17  (Cal. Ct. App. 2005) [stating that the absolute litigation privilege of California Civil Code section 47,

18  "applies to all torts other than malicious prosecution, including fraud, negligence, and negligent

19  misrepresentation" (internal quotes and citations omitted).].) *"Any doubt as to whether the privilege*

20  *applies is resolved in favor of applying it."* (*Adams v. Superior Court*, 2 Cal. App. 4th 521, 529 (Cal.

21  Ct. App. 1992) [emphasis added].)

22  ///

23  ///

24

25  [2]    The pertinent sections of California Civil Code section 47, are as follows:

26  A privileged publication or broadcast is made:

27  (a) In the proper discharge of an official duty

28  (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1048) of Title 1 of Part 3 of the Code of Civil Procedure ...

1. **Reports Regarding the Fitness of a Police Officer are Absolutely Privileged Under Section 47(b)**

Dr. Grossman's communications to the City and Colon regarding Plaintiff and his fitness to serve as a police officer are absolutely privileged under Civil Code section 47(b). (See *Shaddox v. Bertani*, 110 Cal.App.4th 1406 (Cal. Ct. App. 2003).)  In *Shaddox*, a member of the San Francisco Police Department sustained an injury to the right side of his face, which required dental work among other treatment.  Officer Shaddox was prescribed Vicodin, and the prescription was refilled at least twice.  When Officer Shaddox visited his dentist, Dr. Bertani, to obtain a further prescription for Vicodin, Dr. Bertani refused to prescribe it for him.  Officer Shaddox then became very upset.  Concerned that Shaddox might be dependent on narcotic pain medication, Dr. Bertani called the SFPD to report the situation.  After an ensuing internal investigation, Officer Shaddox was disciplined for improper conduct, was assigned to a desk job and was not allowed to carry a firearm.  Shaddox then sued Dr. Bertani asserting, among other claims, causes of action for invasion of privacy and intentional infliction of emotional distress.  The trial court entered judgment in favor of Dr. Bertani, finding that his actions were protected by Civil Code 47(b).

The appellate court affirmed, stating:

> 'Police officers occupy a unique position of trust in society.  They are responsible for enforcing the law and protecting society from criminal acts.  They are given the authority to detain and arrest and, when necessary, to use deadly force'; this authority ultimately rests upon 'the community's confidence in the integrity of its police force.' (Citations omitted) . . .  **California has a policy of encouraging reports concerning suspected misconduct or unfitness by law enforcement officers. . . .Complaints are regarded as privileged by section 47, subdivision (b)(3). . . .Complaints or communications regarding an officer's fitness or performance of duty are firmly established as being within this privilege.**

*(Shaddox, supra,* 110 Cal.App.4th at 1415-1416 [emphasis added]; *see also, Williams v. Taylor*, 129 Cal.App.3d. 745, 753-54 (Cal. Ct. App. 1982).)

In light of these facts and in accordance with *Shaddox*,  Dr. Grossman's report was unquestionably a privileged communication  and cannot, as a matter of law, be a basis for liability.

///

///

**2.    The 47(b) Privilege Applies to the Reports of Experts in Truth-Seeking Inquiries**

The Civil Code section 47(b) privilege is usually applied to communications made in the course of or in relation to judicial or quasi-judicial proceedings. However, the policy served by the privilege of 47(b) applies not only to judicial proceedings but also to all truth-seeking inquiries. (*Crowley v. Katleman,* 8 Cal.4th 666, 695 (Cal. Ct. App. 1994).)

In judicial and other truth-seeking inquiries, experts, such as Dr. Grossman, are often retained to assist in the truth seeking process. Oftentimes, these experts are later sued by the losing or disgruntled party. However, such lawsuits are barred by the 47(b) privilege.

For instance, in a case with particular relevance here, *Gootee v. Lightner,* 224 Cal.App.3d 587 (Cal. Ct. App. 1990), the husband in a marital dissolution action sued the psychologist expert jointly retained by he and his ex-wife, after the psychologist prepared a report and subsequently testified that the wife should have custody of the couple's children. The trial court granted the psychologist's motion for summary judgment on the basis of the 47(b)privilege and the appellate court affirmed. The *Gootee* court reasoned: "Freedom of access to the courts and encouragement of witnesses to testify truthfully will be harmed if neutral experts must fear retaliatory lawsuits from litigants whose disagreement with an expert's opinion perforce convinces them the expert must have been negligent in forming such opinions." (*Gootee, supra,* 224 Cal.App.3d at 593; *see also, Howard v. Drapkin,* 222 Cal.App.3d 843, 860 (Cal. Ct. App. 1990) [absolute privilege of 47(b) extends to neutral third party expert psychologist who makes evaluations in reference to judicial or quasi-judicial proceedings].)

Here, as in *Gootee* and *Howard*, Dr. Grossman was retained as a neutral expert. He was asked to evaluate Plaintiff's continuing fitness to serve as a police officer. He prepared a report as to his findings, with which report Plaintiff apparently disagrees. Because the report was prepared as part of a truth-seeking process preparatory to decision-making by an official body, it is absolutely privileged under 47(b). "To accomplish the purpose of judicial or quasi-judicial proceedings, it is obvious that the parties or persons interested must confer and must marshal their evidence for presentation at the hearing. The right of private parties to combine and make presentations to an official meeting and, as a necessary incident thereto, to prepare materials to be presented is a fundamental adjunct to the right of access to judicial and quasi-judicial proceedings. . . . Accordingly, we conclude that the privilege [of 47(b)]

1  applies to bar appellants' tort claims against respondents." (*Gootee, supra,* 224 Cal.App.3d at 594, 596,

2  quoting *Pettitt v. Levy*, 28 Cal.App.3d 484, 490-91 (1972).)

3      Plaintiff's instant claims against Dr. Grossman are simply barred by application of the 47(b)

4  privilege.  Dr. Grossman's motion to dismiss must be granted.

5      **3.    Dr. Grossman's Communications Are Also Protected by the "Common Interest"
        Privilege of Section 47(c)**

6

7      Dr. Grossman's communications are further privileged under Civil Code section 47(c).  This

8  subdivision applies to a communication:

9          ...without malice, to a person interested therein, (1) by one who is also
           interested, or (2) by one who stands in such a relation to the person
10         interested as to afford a reasonable ground for supposing the motive for
           the communication to be innocent, or (3) who is requested by the person
11         interested to give the information."  Cal. Civ. Code § 47(c).

12  This "common interest" privilege had been applied in several diverse instances.  For example, in *Katz*

13  *v. Rosen*, 48 Cal.App.3d 1032 (Cal. Ct. App. 1975), the court applied the privilege in a libel action

14  against a doctor who had written a letter to the local bar association complaining of the an attorney's

15  conduct.  In *Taus v. Loftus*, 40 Cal.4th 683 (Cal. Ct. App. 2007), the privilege was applied where a

16  psychology professor referred anonymously to the subject of a case study on child sexual abuse while

17  speaking at a conference of mental health professionals.  And in *Jackson v. Mills Corp.*, 2007 WL

18  2705215 (N.D. Cal.), the district court dismissed a complaint against a defendant who had reported

19  various complaints of sexual harassment by female shoppers at a mall to the plaintiff's employer,

20  resulting in the plaintiff's termination.

21      The above cases require application of the common interest privilege in this case.  Dr.

22  Grossman's communications to supervisory personnel within the police department were made to further

23  those defendants' interest in assessing Plaintiff's fitness for duty.  Both City and Colon had a legitimate

24  interest in obtaining this assessment as Plaintiff's employer and highest-level supervisor, respectively.

25  It was also their request which prompted Dr. Grossman to conduct the evaluation, a fact which Plaintiff

26  admits in his complaint.  (See Complaint ¶ 6.)

27      Although the common interest privilege is a *qualified* privilege and can be overcome by a

28  showing of malice, this does not save Plaintiff's claims against Dr. Grossman.  First, Plaintiff fails to

1   even allege malice against Dr. Grossman individually.  In his ninth cause of action for invasion of

2   privacy, Plaintiff refers to "Defendant" in the singular and after alleging that "Defendant" acted

3   maliciously, states that "Defendant's wrongful conduct was carried out and ratified by a managing agent,

4   or officer, or director, of the CITY, which had advance  knowledge of the unfitness of its decision-

5   maker." (Complaint ¶ 125.)  This wording must refer only to Defendant Colon, as Dr. Grossman is not

6   alleged to have had authority to render a decision regarding Plaintiff's employment status.  Plaintiff's

7   eleventh cause of action for defamation contains identical language.  (See Complaint ¶ 151.)

8        Should the Court find that Plaintiff has alleged malice against Dr. Grossman, this still would not

9   be sufficient to overcome the qualified common interest privilege.  More than mere allegations of malice

10  are required.  (*Martin v. Kearney*, 51 Cal.App.3d 309, 312 (Cal. Ct. App. 1975) (affirming trial court's

11  grant of judgment on the pleadings).)  A plaintiff must allege actual facts supporting the claim of malice

12  and not general conclusions.  (*Lesperance v. North Am. Aviation, Inc.*, 217 Cal.App.2d 336, 341 (Cal.

13  Ct. App. 1963).)  Here, the complaint merely makes a general allegation that "Defendant committed the

14  acts alleged herein maliciously, fraudulently, and oppressively."  (Complaint ¶¶ 125 and 151.)  This

15  allegation is conclusory form language, but nothing more.  It is insufficient to allege malice on the part

16  of Dr. Grossman.

17       Finally, various statements in Plaintiff's own complaint undermine any assertion by him that Dr.

18  Grossman acted with malice.  For instance, Plaintiff concedes, as mentioned above, that Dr. Grossman

19  was asked by the City and Colon to evaluate Plaintiff's fitness to serve as a police officer; that this

20  request was made after Plaintiff went through a contentious divorce and after Plaintiff began to suffer

21  from mental disabilities.  (See Complaint ¶¶ 11, 57, 67, 129.)  Plaintiff further admits in his complaint

22  that Dr. Grossman did not over-publish his report, as he concedes that Dr. Grossman limited the

23  dissemination of his report to the City and Colon only – those with a common interest in Plaintiff's

24  fitness.  (See Complaint ¶ 17.)

25       In sum, the common interest privilege of Civil Code section 47(c) applies and also serves to bar

26  Plaintiff's claims herein.

27  ///

28  ///

1        **4.**    *Pettus v. Cole* **Does Not Apply Based On The Allegations of Plaintiff's Complaint**

2        Defendant anticipates that Plaintiff will argue that the privileges under section 47 do not apply

3  to his claim for invasion of privacy based on the holding of *Pettus v. Cole*, 49 Cal.App.4th 402 (Cal. Ct.

4  App. 1996).    However, *Pettus* does not apply on the facts of this case, and does not address the

5  application of section 47(a) and (b)(3).

6        In *Pettus*, the plaintiff, Louis Pettus, was an employee of Du Pont, a private employer.  (*Id.* at

7  p. 414.)  After working for Du Pont for 22 years, Pettus requested disability leave based on a stress-

8  related condition.  (*Ibid.*)  Du Pont's disability leave policy required Pettus to submit to an examination

9  by doctors selected by  Du Pont.  (*Id.* at p. 415.)  Pettus therefore submitted to examinations by a

10  physician and two psychiatrists, Drs. Cole and Unger, arranged and paid for by Du Pont.  (*Ibid.*)

11  Following these examinations, the doctors disclosed detailed information to Pettus's employer regarding

12  Pettus's emotional and medical condition, psychiatric symptoms, social history, and potential alcohol

13  problems.  (*Id.* at pp. 420-422.)  Du Pont subsequently terminated Pettus after he refused to enter an

14  alcohol rehabilitation program.  (*Id.* at p. 424.)    Pettus brought claims against Drs. Cole and Unger for

15  releasing his detailed medical information in violation of the Confidentiality of Medical Information Act

16  ("CMIA"), and for invasion of privacy, as well as separate claims against his employer.  (*Id.* at p. 413.)

17  The trial court granted the doctors' motions for judgment following Pettus's case-in-chief.  (*Id.* at p.

18  413.)

19        On appeal, *Pettus* held that the doctors' disclosures of "detailed medical and psychiatric

20  information" to Pettus's employer violated his privacy rights.  (*Id.* at pp. 447-448.)[3]  Specifically, the

21  court found that a serious violation of Pettus's expectation of privacy occurred when Drs. Cole and

22  Unger disclosed private information related to Pettus's body rash, medications, fears regarding

23  medications, sleep patterns, sex drive, hostile feelings toward coworkers, suicidal thoughts, smoking and

24  drinking, and social and family history, as well as specific details of Pettus' emotional behavior during

25  the examinations.  (*Id.* at p. 441.)  The court stated that an employer should not be allowed access to

26

27  ─────────────────

28      [3]*Pettus*'s holding that Drs. Unger and Cole violated provisions of the CMIA (*Id.* at p. 425) is irrelevant here, as Plaintiff has not brought any claims against Grossman for violation of the CMIA.  Moreover, Plaintiff fails to allege any facts constituting a violation of the CMIA.  In fact, the alleged disclosures made by Dr. Grossman were specifically authorized by subdivision (c)(8)(B) of the CMIA.

1  "detailed family or medical histories" and "mental processes," absent consent or "some other substantial

2  justification." (*Id.* at p. 443.) The court further found that there was no adequate justification for the

3  disclosure. The court elaborated,

> . . . we recognize that employers have important and legitimate interests
> in maintaining an efficient and productive work force . . . ***They are, thus,***
> ***entitled to notice when an employee cannot perform some or all of the***
> ***essential job functions assigned to that employee*** and, if the employee
> hopes to avail himself of paid leave benefits, to such information as is
> necessary to make an evenhanded decision about the employee's
> eligibility for such leave. But again, a medical opinion by an
> employer-aligned physician as to the existence of "functional
> limitations," and as to the "industrial versus nonindustrial" nature of the
> injury, is what the employer "needs" to know to make that eligibility
> determination.

10  (*Id.* at p. 446; emphasis added.) *Pettus* held that the "detailed psychiatric information Du Pont requested

11  and obtained from Drs. Cole and Unger, and ultimately used to make adverse personnel decisions about

12  Pettus, was *far more* than the employer needed to accomplish its legitimate objectives." (*Id.* at p. 442;

13  emphasis in original.)

14      Plaintiff's allegations in the instant matter are clearly distinguishable from the disclosure of

15  detailed psychiatric information and history to a private employer in *Pettus*. Here, Plaintiff's only

16  factual allegations related to Dr. Grossman are that Dr. Grossman stated in writing that Plaintiff lacked

17  integrity and was unfit for duty. (Complaint ¶ 17.) As a matter of law, Plaintiff did not have any

18  reasonable expectation of privacy with regard to this information. As the *Pettus* court discussed,

19  subdivision (c)(8)(B) of the CMIA specifically authorizes disclosure of employment-related healthcare

20  where it describes functional limitations that may "limit the patient's fitness to perform his or her present

21  employment, provided that no statement of medical cause is included in the information disclosed."

22  (Cal. Civil Code section 56.10(c)(8)(B).) Unlike the extensive disclosures in *Pettus*, Plaintiff's

23  allegations that Dr. Grossman declared him unfit for duty and lacking in integrity were clearly authorized

24  as a matter of law under subdivision (c)(8)(B), as descriptions of functional limitations that may limit

25  the employee's fitness for duty. Thus, there was no violation of any expectation of privacy. Further,

26  *Pettus* addressed disclosures to a *private* employer regarding an employee, and the employer's *private*

27  policies related to disability determination. *Pettus* did not involve the fitness of a peace officer for duty,

28  and official proceedings related thereto. As discussed in *Shaddox*, *supra*,

1    Police officers occupy a unique position of trust in our society. They are
2    responsible for enforcing the law and protecting society from criminal acts. They
     are given the authority to detain and to arrest and, when necessary, to use deadly
3    force"; **this authority ultimately rests upon "the community's confidence in
     the integrity of its police force**.

4  (*Shaddox v. Bertani, supra,* 110 Cal.App.4th at p. 1416, citing *Mary M. v. City of Los Angeles,* 54 Cal.3d

5  202, 206-207 (Cal. Ct. App. 1991).)   Thus, Dr. Grossman's alleged disclosures regarding Plaintiff's

6  fitness and integrity clearly served a legitimate purpose specifically authorized by the CMIA, and

7  therefore outweighed any perceived privacy right as a matter of law.

8         Although *Pettus* held that Civil Code sections 47(b)(2) and (c) did not apply to Pettus's claims

9  against Drs. Cole and Unger (*Id.* at p. 436), *Pettus* did not address the application of section

10  47(b)(3), addressed in the instant Motion.  With regard to the application of section 47(b)(2), *Pettus*

11  held that the employee's request for leave and DuPont's disability determination were not judicial or

12  quasi-judicial proceedings falling under that section because there was "no dispute resolution

13  mechanism, no hearings, and the only decision-makers involved were a *private employer*, Du Pont, and

14  its employees and agents."  (*Id.* at p. 438; [emphasis added].)  *Pettus* did not involve an official

15  proceeding related to the fitness of a peace officer, as in the instant matter.

16        In holding that section 47(c) did not apply, the *Pettus* court stated, "When the communication

17  involves a disclosure of an employee's medical information by a health care provider to an employer,

18  the more specific privileges established by the CMIA supersede the general privilege afforded under

19  section 47(c)." (*Id.* at p. 438.)  As discussed above, Plaintiff alleges no violation of the CMIA.  In fact,

20  the alleged disclosures by Dr. Grossman were clearly authorized under the CMIA.  Thus, in our matter

21  there is no violation of the CMIA that supersedes the privilege set forth under section 47(c).

22        In sum, Plaintiff may not use Dr. Grossman's fitness report as a basis for claims against  Dr.

23  Grossman, because Dr. Grossman is afforded absolute immunity under the privileges established by

24  California Civil Code section 47.  Specifically, any statements made by Dr. Grossman  in his fitness

25  report  were made preparatory to an official proceeding, where his participation and statements were

26  authorized by law, and were logically related to achieving the objectives of the official proceeding.  His

27  statement were also made to a person/entity with a common interest in the subject matter of his report.

28  Thus, Plaintiff fails to demonstrate a probability of prevailing at trial, because he fails to state a claim

1  upon which relief may be granted and because no amendment can or will correct this defect of the

2  pleadings.

3  ### VI.

4  ### DR. GROSSMAN IS ENTITLED TO FEES AND
   ### COSTS INCURRED IN RESPONDING TO PLAINTIFF'S COMPLAINT

5

6  The prevailing party on a Motion to Strike under the California Anti-SLAPP statute is

7  entitled to recover its attorneys fees and costs. (Cal. Civ. Proc. Code § 425.16(c).) The award of

8  attorneys fees and costs to a successful defendant under the Anti-SLAPP statute is mandatory.

9  (*Pfeiffer Venice Properties v. Bernard*, 101 Cal. App. 4th 211 (Cal. Ct. App. 2002); *see also,*

10  *Ketchum v. Moses*, 24 Cal. 4th 1122 (Cal. 2001) ["any SLAPP defendant who brings a successful

11  motion to strike is entitled to mandatory attorney fees"].) "The right of prevailing defendants to

12  recover their reasonable attorney fees under [S]ection 425.16 adequately compensates them for the

13  expense of responding to a baseless lawsuit." (*Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 362

14  (Cal. Ct. App. 1995).)

15  The purpose of the Anti-SLAPP statute is promoted by construing the provision broadly to

16  allow a defendant to recover mandatory reasonable attorney fees for the legal services actually

17  provided in response to a SLAPP suit. (*Dowling*, 85 Cal. App. 4th at 1400.) "Reasonableness

18  depends in part on 'the success of the attorney's efforts'." (*Metabolife International, Inc. v.*

19  *Wornick*, 213 F. Supp. 2d 1220, 1223 (S.D. Cal. 2002), *citing Church of Scientology of California*,

20  42 Cal. App. 4th at 659.)[4]

21  The total sum of such recovery properly reflects *all* aspects of the defensive litigation,

22  including the fees incurred in connection with the Anti-SLAPP Motion, the efforts towards the

23  recovery of the attorneys fees and costs under the Anti-SLAPP statute, and all fees generated in the

24  offer of alternative legal arguments. (*See e.g., Dowling*, 85 Cal. App. 4th at 1425 [prevailing SLAPP

25

26

27  ───────────

[4] For example, in *Metabolife International*, the Southern District of California held that the prevailing SLAPP defendant was entitled to **all** of the legal fees and costs that he had incurred in retaining two firms to provide a defense against plaintiff's SLAPP lawsuit, specifically **including** those expended in asserting alternative legal grounds for the dismissal of

28  plaintiff's lawsuit, regardless of whether those arguments were ever reached by the court. (*Metabolife International, Inc.*, 213 F. Supp. 2d at 1223.) The court further held that, because all of the causes of action against the defendant were subject to the Anti-SLAPP statute, all of his attorneys fees and costs were incurred in connection with the Anti-SLAPP Motion. (*Id.*)

1  defendant entitled to recover "modest" award of $9,300 in attorney fees to compensate for legal

2  services in connection with both Anti-SLAPP Motion and the recovery of attorney fees and costs

3  under Anti-SLAPP statute]; *see also, Metabolife International, Inc.,* 213 F. Supp. 2d at 1223-1224

4  [prevailing SLAPP defendant entitled to recover fees and costs of $318,687.99 incurred for

5  preparation of Anti-SLAPP motion and assertion of alternative legal defenses in response to

6  meritless litigation].)

7       Such is the case in this matter.  Plaintiff's entire lawsuit against Dr. Grossman is subject to

8  the Anti-SLAPP provision, and thus all of his fees and costs are properly recoverable.  As such, Dr.

9  Grossman is entitled to recover all fees incurred in defending himself against Plaintiff's meritless

10  lawsuit, in an amount to determined following hearing on this Motion and an Order in Dr.

11  Grossman's favor.

## VII.  CONCLUSION

13       Based on the foregoing, Defendant Ira Grossman respectfully requests that the Court grant his

14  Motion to Strike Plaintiff's Complaint and enter an order awarding Dr. Grossman his fees and costs.

15  Support for such award will be the subject of a subsequently filed Declaration.

17  Dated: April 7, 2008                          WHITE, OLIVER & AMUNDSON

19                                                By: s:/Susan L. Oliver
20                                                     Susan L. Oliver
                                                      Attorneys for Ira Grossman