1  Susan L. Oliver (SBN# 160902)
   **WHITE, OLIVER & AMUNDSON**
2  A Professional Corporation
   550 West C Street, Suite 950
3  San Diego, California 92101
   Telephone: (619) 239-0300
4  Facsimile: (619) 239-0344

5  Attorneys for Defendant Ira Grossman

6

7

8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  JOHN ESPINOZA, an individual        )    CASE NO. 07 CV 2218 LAB (RBB)
                                        )
                                        )    **DEFENDANT IRA GROSSMAN'S**
12              Plaintiff,              )    **MEMORANDUM OF POINTS AND**
                                        )    **AUTHORITIES IN SUPPORT OF**
13  v.                                  )    **MOTION TO DISMISS**
                                        )
14                                      )
    CITY OF IMPERIAL, a public entity; MIGUEL)   **Date:      June 2, 2008**
15  COLON, an individual; IRA GROSSMAN, an)      **Time:      11:15 a.m.**
    individual; and DOES 1-50, inclusive )       **Judge:     Hon. Larry A. Burns**
16                                      )        **Ctrm:      9**
                                        )
17              Defendants.             )    **[ORAL ARGUMENT REQUESTED]**
    _____)

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

# TABLE OF CONTENTS

Pages

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

II.     A MOTION TO DISMISS IS APPROPRIATE TO ADDRESS ISSUES
        RAISED IN THIS PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

III.    ALL OF PLAINTIFF'S CLAIMS AGAINST DR. GROSSMAN ARE BARRED BY
        THE PRIVILEGES PROVIDED FOR IN CALIFORNIA CIVIL CODE
        SECTION 47 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

        A.   The Section 47(b) Privilege is Absolute and is to be Construed Broadly . . . . . . . . .   2

        B.   Reports Regarding the Fitness of a Police Officer are Absolutely Privileged
             Under Section 47(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

        C.   The 47(b) Privilege Applies to the  Reports of Experts in Truth-Seeking Inquiries .   5

        D.   Dr. Grossman's Communications Are Also Protected by the "Common Interest"
             Privilege of Section 47(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

        E.   Plaintiff's Anticipated Reliance on *Pettus v. Cole* is Misplaced . . . . . . . . . . . . . . .   8

IV.     PLAINTIFF'S CAUSE OF ACTION FOR INVASION OF
        PRIVACY IS SEPARATELY FLAWED . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

V.      PLAINTIFF HAS FAILED TO STATE A CLAIM FOR INTENTIONAL
        INFLICTION OF EMOTIONAL DISTRESS . . . . . . . . . . . . . . . . . . . . . . . . .   12

VI.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

# TABLE OF AUTHORITIES

Pages

## CASES

*Balisteri v. Pacifica Police Dept.*,
    901 F.2d 696 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Crowley v. Katleman*,
    8 Cal.4th 666 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Davidson v. City of Westminster*,
    32 Cal.3d 197 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*De La Cruz v. Tormei*,
    582 F.2d 45 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Foothill Federal Credit Union v. Superior Court*,
    155 Cal.App.4th 632 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Gootee v. Lightner*,
    224 Cal.App.3d 587 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6

*Heller v. Norcal Mut. Ins. Co.*,
    8 Cal.4th 30 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Hill v. NCAA*,
    7 Cal.4th 1 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Howard v. Drapkin*,
    222 Cal.App.3d 843 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

*Jackson v. Mills Corp.*,
    2007 WL 2705215 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Jacob B. v. County of Shasta*,
    40 Cal.4th 948 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Katz v. Rosen*,
    48 Cal.App.3d 1032 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Lesperance v. North Am. Aviation, Inc.*,
    217 Cal.App.2d 336, 341 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Lovelace v. Software Spectrum, Inc.*,
    78 F.3d 1015 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Martin v. Kearney,*
    51 Cal.App.3d 309 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Mary M. v. City of Los Angeles,*
    54 Cal.3d 202 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*McGough v. University of San Francisco,*
    214 Cal.App.3d 1577 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Moore v. Conlifffe,*
    7 Cal.4th 634, 642 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Pareto v. FDIC,*
    139 F.3d 696 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Pettitt v Levy,*
    28 Cal.App.3d 484 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pettus v. Cole,*
    49 Cal.App.4th 402 (Cal.App.1.Dist.1996) . . . . . . . . . . . . . . . . . . . . . . . 8-11

*Ramalingam v. Thompson,*
    151 Cal.App.4th 491 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Rubin v. Green,*
    4 Cal.4th 1187 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Shaddox v. Bertani,*
    110 Cal.App.4th 1406 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 10, 13

*Silberg v. Anderson,*
    50 Cal.3d 205 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Taus v. Loftus,*
    40 Cal.4th 683 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Weisbuch v. County of Los Angeles*
    119 F.3d 778 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Williams v. Taylor,*
    129 Cal.app.3d. 745 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

///

1

<u>STATUTES</u>

2

42 U.S.C. § 12112(d)(4)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

3

4

California Civil Code section 47 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

5

California Civil Code sections 47(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-6

6

California Civil Code sections 47(b)(2) and (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

7

California Civil Code section 47(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

8

California Civil Code section 47(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 8, 11

9

California Civil Code section 56.10(c)(8)(B) . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 10, 12, 13

10

Federal Rule of Civil Procedure section 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

11

12

<u>OTHER</u>

13

14

Restatement 2d Torts, § 652D, com. (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

## INTRODUCTION

Plaintiff John Espinoza was terminated from his position as a police officer with the CITY OF IMPERIAL ("City") following a psychological evaluation which found him unfit for duty. He now alleges defamation, invasion of privacy and intentional infliction of emotional distress against Defendant IRA GROSSMAN ("Dr. Grossman"), the psychologist retained by City to perform the evaluation. Dr. Grossman, in conducting his evaluation of Plaintiff, and in forwarding his evaluative report to the City was making communications in connection with an official proceeding or other truth seeking inquiry. Dr. Grossman's communications are therefore privileged under California Civil Code section 47. The fact that Dr. Grossman's purported communications are absolutely privileged renders all of Plaintiff's claims in this matter barred as a matter of law.

Further, Plaintiff's invasion of privacy claim is separately flawed because it cannot survive the necessary balancing test applicable where a police officer is required to submit to a fitness-for-duty evaluation. Finally, Plaintiff fails to allege facts sufficient to support the elements of a claim for intentional infliction of emotional distress. As such, the instant motion to dismiss must be granted.

# II.

## A MOTION TO DISMISS IS APPROPRIATE TO ADDRESS ISSUES RAISED IN THIS PROCEEDING

A Rule 12(b)(6) motion tests the legal sufficiency of the claims stated in the complaint. (*De La Cruz v. Tormei*, 582 F.2d 45, 48 (9th Cir. 1978).) The motion should be granted when: (1) there is a lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory (*Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990)); or, (2) the complaint allegations disclose a complete defense or bar to a cause of action. (*Weisbuch v. County of Los Angeles* 119 F.3d 778, 783, fn.1. (9th Cir. 1997).) The Court need not accept as true conclusory allegations, nor need it accept unreasonable inferences or unwarranted deductions of fact. (*Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (9th Cir. 1996); *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).)

///

1    Here, Plaintiff's Complaint must be dismissed, because there is a complete defense to each

2    and every cause of action asserted against Dr. Grossman by Plaintiff.

3    **III.**

4    **ALL OF PLAINTIFF'S CLAIMS AGAINST DR. GROSSMAN ARE BARRED BY THE
     PRIVILEGES PROVIDED FOR IN CALIFORNIA CIVIL CODE SECTION 47**

5

6    The crux of Plaintiff's allegations against Dr. Grossman is that Dr. Grossman conducted a

7    psychological examination of Plaintiff, made purportedly false statements regarding Plaintiff in a

8    report submitted to the Plaintiff's employer, the City of Imperial Police Department, and, in the

9    report, erroneously concluded Plaintiff was unfit for duty.  (Complaint, ¶¶ 17, 116-126, 138.)

10   Plaintiff concedes that he had a history of mental disabilities (Complaint, ¶¶ 57, 67, 129), that  this

11   examination was undertaken at the behest of Defendants City and its Chief of Police, Miguel Colon

12   (see Complaint, ¶6) and that Dr. Grossman's report was only submitted to City and Colon

13   (Complaint, ¶ 17.)

14   As set forth more fully below, the findings and report of Dr. Grossman are absolutely

15   privileged under California Civil Code sections 47(b) and qualifiedly privileged under section 47(c).

16   **A.    The Section 47(b) Privilege is Absolute and is to be Construed Broadly**

17   "For well over a century, communications with 'some relation' to judicial [or official]

18   proceedings have been absolutely immune from tort liability by the privilege codified as section

19   47(b)." (*Rubin v. Green* , 4 Cal.4th 1187, 1193 (1993).)   California Civil Code section 47, provides,

20   in relevant part:

21   A privileged publication or broadcast is made:

22   (a) In the proper discharge of an official duty

23   (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official

24   proceeding authorized by law, or (4) in the initiation or course of any other proceeding

25   authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1048) of

26   Title 1 of Part 3 of the Code of Civil Procedure . . .

27   A primary purpose of the 47(b) privilege "is to assure utmost freedom of communication

28   between citizens and public authorities whose responsibility is to investigate and remedy

1  wrongdoing. . . .  Since the 'external threat of liability is destructive of this fundamental right and

2  inconsistent with the effective administration of justice' (citation), courts have applied the privilege

3  to eliminate the threat of liability for communications made during all kinds of truth-seeking

4  proceedings: judicial, quasi-judicial, legislative and other official proceedings. The dictates of public

5  policy require that the paths which lead to the ascertainment of truth should be left as free and

6  unobstructed as possible." (*Foothill Federal Credit Union v. Superior Court*, 155 Cal.App.4th 632,

7  637 (2007); *see also, Moore v. Conlifffe*, 7 Cal.4th 634, 642 (1994).)

8  　　　　Thus, the 47(b) privilege "bars all tort causes of action except malicious prosecution".

9  (*Jacob B. v. County of Shasta*, 40 Cal.4th 948, 960 (2007).)  With specific relevance to the claims

10  asserted by Plaintiff here, the California Supreme Court has held that  "[s]ection 47(b)'s litigation

11  privilege bars a privacy cause of action whether labeled as based on common law, statute or

12  Constitution." (*Id.* at 962.)   The privilege also has been expressly held to bar claims for intentional

13  infliction of emotional distress. (*Foothill Federal Credit Union, supra,* 155 Cal.App.4th at 635

14  ["The privilege is absolute, and it applies to causes of action for intentional infliction of emotional

15  distress and invasion of privacy."]; *see also, Silberg v. Anderson*, 50 Cal.3d 205, 215 (1990).)  In

16  sum, "section 47(b) creates what in many other contexts is termed an 'immunity' from suit."

17  (*Ramalingam v. Thompson*, 151 Cal.App.4th 491, 499 (2007).)

18  　　　　Moreover, use of the privilege to bar a suit  is appropriate at the demurrer/motion to dismiss

19  stage.  Where the operative facts are undisputed, as here, "the question of the application of the

20  privilege is a matter of law." (*Gootee v. Lightner*, 224 Cal.App.3d 587, 591 (1990).) "The asolute

21  immunity and privilege to which defendant is entitled must protect [him] from suit.  Such doctrines

22  are not mere defenses to liability. (Citations omitted).  If such protection is to be meaningful it must

23  be effective to prevent suits such as this one *from going beyond demurrer*."  (*Howard v. Drapkin*,

24  222 Cal.App.3d 843, 864 (1990) [emphasis added].)

25  **B.**　　**Reports Regarding the Fitness of a Police Officer are Absolutely Privileged**
26  　　　　**Under Section 47(b)**

27  　　　　Dr. Grossman's communications to the City and Colon regarding Plaintiff and his fitness to

28  serve as a police officer are absolutely privileged under Civil Code section 47(b), thus requiring

1  dismissal of Plaintiff's instant action. (See *Shaddox v. Bertani*, 110 Cal.App.4th 1406 (2003).)  In

2  *Shaddox*, a member of the San Francisco Police Department sustained an injury to the right side of

3  his face, which required dental work among other treatment.  Officer Shaddox was prescribed

4  Vicodin, and the prescription was refilled at least twice. When Officer Shaddox visited his dentist,

5  Dr. Bertani, to obtain a further prescription for Vicodin, Dr. Bertani refused to prescribe it for him.

6  Officer Shaddox then became very upset.  Concerned that Shaddox might be dependent on narcotic

7  pain medication, Dr. Bertani called the SFPD to report the situation.  After an ensuing internal

8  investigation, Officer Shaddox was disciplined for improper conduct , was assigned to a desk job and

9  was not allowed to carry a firearm.  Shaddox then sued Dr. Bertani asserting, among other claims,

10 causes of action for invasion of privacy and intentional infliction of emotional distress.  The trial

11 court entered judgment in favor of Dr. Bertani, finding that his actions were protected by Civil Code

12 47(b).

13         The appellate court affirmed, stating:

14             'Police officers occupy a unique position of trust in society.  They
               are responsible for enforcing the law and protecting society from
15             criminal acts.  They are given the authority to detain and arrest and,
               when necessary, to use deadly force'; this authority ultimately rests
16             upon 'the community's confidence in the integrity of its police force.'
               (Citations omitted) . . .  **California has a policy of encouraging reports**
17             **concerning suspected misconduct <u>or unfitness</u> by law enforcement officers. . . .**
               **Complaints are regarded as privileged by section 47, subdivision (b)(3). . . .**
18             **Complaints or communications regarding an officer's fitness or performance**
               **of duty are firmly established as being within this privilege.**
19

20 *(Shaddox, supra,* 110 Cal.App.4th at 1415-1416 [emphasis added]; *see also, Williams v. Taylor*, 129

21 Cal.app.3d. 745, 753-54 (1982).)

22         Here, Dr. Grossman was specifically asked by Plaintiff's employer, the City, to evaluate his

23 fitness to continue to serve as a police officer and to report his "fitness" determinations to the City.

24 Plaintiff concedes that this fitness determination was requested by the City after he went through a

25 protracted and contentious divorce (Complaint, ¶11) and after he developed "mental disabilities".

26 (Complaint, ¶¶ 57, 67, 129.)    Similar to *Shaddox*, this fitness determination was part of an official

27 proceeding authorized by law to assess the continuing competence of persons with the authority to

28 detain, arrest, and use excessive force.  In fact, the instant allegations weigh even more heavily in

1  favor of application of the privilege, as Plaintiff concedes that the proceedings by his employer

2  followed his development of mental issues.   Under the Americans with Disabilities Act, an

3  employer is permitted to require a medical examination and inquiry so long as such examination or

4  inquiry is shown to be job-related and consistent with business necessity.  (42 U.S.C. §

5  12112(d)(4)(A).)  Here, Plaintiff alleges that he is a "'qualified individual with a disability' as

6  defined in § 108 of the ADA, 42 U.S.C. § 12111(8)."  (Complaint ¶ 36.)  Further, under California

7  Civil Code section 56.10(c)(8)(B), disclosure of employment-related healthcare is specifically

8  authorized where it describes functional limitations that may "limit the patient's fitness to perform

9  his or her present employment, provided that no statement of medical cause is included in the

10  information disclosed."  (Cal. Civil Code section 56.10(c)(8)(B).)  Thus, Plaintiff's allegations that

11  Dr. Grossman declared him unfit for duty and lacking in integrity were clearly authorized as a matter

12  of law under subdivision (c)(8)(B), as descriptions of functional limitations that may limit the

13  employee's fitness for duty.

14        In light of these facts and in accordance with *Shaddox*,  Dr. Grossman's report was

15  unquestionably a privileged communication  and cannot, as a matter of law, be a basis for liability.

16  Dr. Grossman's motion to dismiss must be granted.[1]

17  **C.    The 47(b) Privilege Applies to the  Reports of Experts in Truth-Seeking Inquiries**

18        The Civil Code section 47(b) privilege is usually applied to communications made in the

19  course of or in relation to judicial or quasi-judicial proceedings.  However, the policy served by the

20  privilege of 47(b) applies not only to judicial proceedings but also to all truth-seeking inquiries.

21  (*Crowley v. Katleman*, 8 Cal.4th 666, 695 (1994).)

22        In judicial and other truth-seeking inquiries, experts, such as Dr. Grossman, are often retained

23  to assist in the truth seeking process.  Oftentimes, these experts are later sued by the losing or

24  disgruntled party.  However, such lawsuits are barred by the 47(b) privilege.

25        For instance, in a case with particular relevance here,  *Gootee v. Lightner, supra,* 224

26  Cal.App.3d 587, the husband in a marital dissolution action sued the psychologist expert jointly

27

28
_____

[1] Any other result would chill the exercise of professional judgment of experts called upon to assess a police officer's fitness for duty, ultimately undermining public confidence and trust in its police force.

1  retained by he and his ex-wife, after the psychologist prepared a report and subsequently testified

2  that the wife should have custody of the couple's children.  The trial court granted the psychologist's

3  motion for summary judgment on the basis of the 47(b) privilege and the appellate court affirmed.

4  The *Gootee* court reasoned: "Freedom of access to the courts and encouragement of witnesses to

5  testify truthfully will be harmed if neutral experts must fear retaliatory lawsuits from litigants whose

6  disagreement with an expert's opinion perforce convinces them the expert must have been negligent

7  in forming such opinions." (*Gootee, supra,* 224 Cal.App.3d at 593; *see also, Howard, supra,* 222

8  Cal.App.3d at 860 [absolute privilege of 47(b) extends to neutral third party expert psychologist who

9  makes evaluations in reference to judicial or quasi-judicial proceedings].)

10        Here, as in *Gootee,* Dr. Grossman was retained as a neutral expert.  He was asked to evaluate

11  Plaintiff's continuing fitness to serve as a police officer.  He prepared a report as to his findings, with

12  which report Plaintiff apparently disagrees.  Because the report was prepared as part of a truth-

13  seeking process preparatory to decision-making by an official body, it is absolutely privileged under

14  47(b).  "To accomplish the purpose of judicial or quasi-judicial proceedings, it is obvious that the

15  parties or persons interested must confer and must marshal their evidence for presentation at the

16  hearing.  The right of private parties to combine and make presentations to an official meeting and,

17  as a necessary incident thereto, to prepare materials to be presented is a fundamental adjunct to the

18  right of access to judicial and quasi-judicial proceedings. . . .  Accordingly, we conclude that the

19  privilege [of 47(b)] applies to bar appellants' tort claims against respondents." (*Gootee, supra,* 224

20  Cal.App.3d at 594, 596, quoting *Pettitt v Levy,* 28 Cal.App.3d 484, 490-91 (1972).)

21        Plaintiff's instant claims against Dr. Grossman are simply barred by application of the 47(b)

22  privilege.  Dr. Grossman's motion to dismiss must be granted.

23  **D.**    **Dr. Grossman's Communications Are Also Protected by the "Common Interest"**
       **Privilege of Section 47(c)**

24

25        Dr. Grossman's communications are further privileged under Civil Code section 47(c).  This

26  subdivision applies to a communication:

27      "...without malice, to a person interested therein, (1) by one who is also interested, or
       (2) by one who stands in such a relation to the person interested as to afford a

28      reasonable ground for supposing the motive for the communication to be innocent, or
       (3) who is requested by the person interested to give the information." Cal. Civ. Code

1    § 47(c).

2    This "common interest" privilege had been applied in several diverse instances.  For

3    example, in *Katz v. Rosen*, 48 Cal.App.3d 1032 (1975), the court applied the privilege in a libel

4    action against a doctor who had written a letter to the local bar association complaining of the an

5    attorney's conduct.  In *Taus v. Loftus*, 40 Cal.4th 683 (2007), the privilege was applied where a

6    psychology professor referred anonymously to the subject of a case study on child sexual abuse while

7    speaking at a conference of mental health professionals.  And in *Jackson v. Mills Corp.*, 2007 WL

8    2705215 (N.D. Cal.), the district court dismissed a complaint against a defendant who had reported

9    various complaints of sexual harassment by female shoppers at a mall to the plaintiff's employer,

10   resulting in the plaintiff's termination.

11   The above cases require application of the common interest privilege in this case.  Dr.

12   Grossman's communications to supervisory personnel within the police department were made to

13   further those defendants' interest in assessing Plaintiff's fitness for duty.  Both City and Colon had a

14   legitimate interest in obtaining this assessment as Plaintiff's employer and highest-level supervisor,

15   respectively.  It was also their request which prompted Dr. Grossman to conduct the evaluation, a

16   fact which Plaintiff admits in his complaint.  (See Complaint ¶ 6.)

17   Although the common interest privilege is a *qualified* privilege and can be overcome by a

18   showing of malice, this does not save Plaintiff's claims against Dr. Grossman.  First, Plaintiff fails to

19   even allege malice against Dr. Grossman individually.  In his ninth cause of action for invasion of

20   privacy, Plaintiff refers to "Defendant" in the singular and after alleging that"Defendant" acted

21   maliciously, states that "Defendant's wrongful conduct was carried out and ratified by a managing

22   agent, or officer, or director, of the CITY, which had advance  knowledge of the unfitness of its

23   decision-maker."  (Complaint ¶ 125.)  This wording must refer only to Defendant Colon, as Dr.

24   Grossman is not alleged to have had authority to render a decision regarding Plaintiff's employment

25   status.  Plaintiff's eleventh cause of action for defamation contains identical language.  (See

26   Complaint ¶ 151.)

27   Should the Court find that Plaintiff has alleged malice against Dr. Grossman, this still would

28   not be sufficient to overcome the qualified common interest privilege.  More than mere allegations of

1  malice are required. *Martin v. Kearney*, 51 Cal.App.3d 309, 312 (1975) (affirming trial court's grant

2  of judgment on the pleadings). A plaintiff must allege actual facts supporting the claim of malice

3  and not general conclusions. *Lesperance v. North Am. Aviation, Inc.*, 217 Cal.App.2d 336, 341

4  (1963). Here, the complaint merely makes a general allegation that "Defendant committed the acts

5  alleged herein maliciously, fraudulently, and oppressively." (Complaint ¶¶ 125 and 151.) This

6  allegation is conclusory form language, but nothing more. It is insufficient to allege malice on the

7  part of Dr. Grossman.

8  Finally, various statements in Plaintiff's own complaint undermine any assertion by him that

9  Dr. Grossman acted with malice. For instance, Plaintiff concedes, as mentioned above, that Dr.

10  Grossman was asked by the City and Colon to evaluate Plaintiff's fitness to serve as a police officer;

11  that this request was made after Plaintiff went through a contentious divorce and after Plaintiff began

12  to suffer from mental disabilities. Plaintiff further admits in his complaint that Dr. Grossman did not

13  over-publish his report, as he concedes that Dr. Grossman limited the dissemination of his report to

14  the City and Colon only – those with a common interest in Plaintiff's fitness. (Complaint ¶¶ 17 and

15  138.)

16  In sum, Plaintiff has not and cannot allege malice by Dr. Grossman, so that the common

17  interest privilege of Civil Code section 47(c) applies and serves to bar Plaintiff's claims herein.

18  **E.    Plaintiff's Anticipated Reliance on *Pettus v. Cole* is Misplaced.**

19  Defendant anticipates that Plaintiff will argue that the privileges under section 47 do not

20  apply to his claim for invasion of privacy based on the holding of *Pettus v. Cole,* 49 Cal.App.4th 402

21  (Cal.App.1.Dist.1996). However, Pettus does not apply on the facts of this case, and does not

22  address the application of section 47(b)(3).

23  In *Pettus*, the plaintiff, Louis Pettus, was an employee of Du Pont, a private employer. (*Id.* at

24  p. 414.) After working for Du Pont for 22 years, Pettus requested disability leave based on a stress-

25  related condition. (*Ibid.*) Du Pont's disability leave policy required Pettus to submit to an

26  examination by doctors selected by Du Pont. (*Id.* at p. 415.) Pettus therefore submitted to

27  examinations by a physician and two psychiatrists, Drs. Cole and Unger, arranged and paid for by Du

28  Pont. (*Ibid.*) Following these examinations, the doctors disclosed detailed information to Pettus's

1  employer regarding Pettus's emotional and medical condition, psychiatric symptoms, social history,

2  and potential alcohol problems. (*Id.* at pp. 420-422.) Du Pont subsequently terminated Pettus after

3  he refused to enter an alcohol rehabilitation program. (*Id.* at p. 424.)    Pettus brought claims against

4  Drs. Cole and Unger for releasing his detailed medical information in violation of the Confidentiality

5  of Medical Information Act ("CMIA"), and for invasion of privacy, as well as separate claims

6  against his employer. (*Id.* at p. 413.) The trial court granted the doctors' motions for judgment

7  following Pettus's case-in-chief. (*Id.* at p. 413.)

8        On appeal, *Pettus* held that the doctors' disclosures of "detailed medical and psychiatric

9  information" to Pettus's employer violated his privacy rights. (*Id.* at pp. 447-448.)[2]  Specifically, the

10  court found that a serious violation of Pettus's expectation of privacy occurred when Drs. Cole and

11  Unger disclosed private information related to Pettus's body rash, medications, fears regarding

12  medications, sleep patterns, sex drive, hostile feelings toward coworkers, suicidal thoughts, smoking

13  and drinking, and social and family history, as well as specific details of Pettus' emotional behavior

14  during the examinations. (*Id.* at p. 441.) The court stated that an employer should not be allowed

15  access to "detailed family or medical histories" and "mental processes," absent consent or "some

16  other substantial justification." (*Id.* at p. 443.) The court further found that there was no adequate

17  justification for the disclosure.  The court elaborated,

18        . . . we recognize that employers have important and legitimate interests in maintaining an
          efficient and productive work force . . . ***They are, thus, entitled to notice when an employee***
19        ***cannot perform some or all of the essential job functions assigned to that employee*** and, if
          the employee hopes to avail himself of paid leave benefits, to such information as is
20        necessary to make an evenhanded decision about the employee's eligibility for such leave.
          But again, a medical opinion by an employer-aligned physician as to the existence of
21        "functional limitations," and as to the "industrial versus nonindustrial" nature of the injury, is
          what the employer "needs" to know to make that eligibility determination.
22
23  (*Id.* at p. 446; emphasis added.) *Pettus* held that the "detailed psychiatric information Du Pont

24  requested and obtained from Drs. Cole and Unger, and ultimately used to make adverse personnel

25  decisions about Pettus, was *far more* than the employer needed to accomplish its legitimate

26  objectives." (*Id.* at p. 442; emphasis in original.)

27  _____

28      [2]*Pettus*'s holding that Drs. Unger and Cole violated provisions of the CMIA (*Id.* at p. 425) is irrelevant here, as
    Plaintiff has not brought any claims against Grossman for violation of the CMIA. Moreover, Plaintiff fails to allege any facts
    constituting a violation of the CMIA.  In fact, the alleged disclosures made by Dr. Grossman were specifically authorized
    by subdivision (c)(8)(B) of the CMIA.

1    Plaintiff's allegations in the instant matter are clearly distinguishable from the disclosure of

2    detailed psychiatric information and history to a private employer in *Pettus*. Here, Plaintiff's only

3    factual allegations related to Dr. Grossman are that Dr. Grossman stated in writing that Plaintiff

4    lacked integrity and was unfit for duty. (Complaint. ¶ 17.) As a matter of law, Plaintiff did not have

5    any reasonable expectation of privacy with regard to this information. As the *Pettus* court discussed,

6    subdivision (c)(8)(B) of the CMIA specifically authorizes disclosure of employment-related

7    healthcare where it describes functional limitations that may "limit the patient's fitness to perform

8    his or her present employment, provided that no statement of medical cause is included in the

9    information disclosed." (Cal. Civil Code section 56.10(c)(8)(B).) Unlike the extensive disclosures

10   in *Pettus*, Plaintiff's allegations that Dr. Grossman declared him unfit for duty and lacking in

11   integrity were clearly authorized as a matter of law under subdivision (c)(8)(B), as descriptions of

12   functional limitations that may limit the employee's fitness for duty. Thus, there was no violation of

13   any expectation of privacy. Further, *Pettus* addressed disclosures to a *private* employer regarding an

14   employee, and the employer's *private* policies related to disability determination. *Pettus* did not

15   involve the fitness of a peace officer for duty, and official proceedings related thereto.   As discussed

16   in *Shaddox*, *supra*,

17

18       "Police officers occupy a unique position of trust in our society. They are responsible for
         enforcing the law and protecting society from criminal acts. They are given the authority to
         detain and to arrest and, when necessary, to use deadly force"; **this authority ultimately**

19       **rests upon "the community's confidence in the integrity of its police force**."

20   (*Shaddox v. Bertani* 110 Cal.App.4th 1406, 1416 (2003), citing *Mary M. v. City of Los Angeles*, 54

21   Cal.3d 202, 206-207 (1991).)   Thus, Dr. Grossman's alleged disclosures regarding Plaintiff's fitness

22   and integrity clearly served a legitimate purpose specifically authorized by the CMIA, and therefore

23   outweighed any perceived privacy right as a matter of law.

24       Although *Pettus* held that Civil Code sections 47(b)(2) and (c) did not apply to Pettus's

25   claims against Drs. Cole and Unger (*Id.* at p. 436), *Pettus* did not address the application of section

26   47(b)(3), addressed in the instant Motion. With regard to the application of section 47(b)(2), *Pettus*

27   held that the employee's request for leave and DuPont's disability determination were not judicial or

28   quasi-judicial proceedings falling under that section because there was "no dispute resolution

1   mechanism, no hearings, and the only decision-makers involved were a *private employer*, Du Pont,

2   and its employees and agents." (*Id.* at p. 438; emphasis added.)  *Pettus* did not involve an official

3   proceeding related to the fitness of a peace officer, as in the instant matter.

4         In holding that section 47(c) did not apply, the *Pettus* court stated, "When the communication

5   involves a disclosure of an employee's medical information by a health care provider to an employer,

6   the more specific privileges established by the CMIA supersede the general privilege afforded under

7   section 47(c)." (*Id.* at p. 438.)  As discussed above, Plaintiff alleges no violation of the CMIA.  In

8   fact, the alleged disclosures by Dr. Grossman were clearly authorized under the CMIA.  Thus, in this

9   matter there is no violation of the CMIA that supersedes the privilege set forth under section 47(c).

10                                              **IV.**

11              **PLAINTIFF'S CAUSE OF ACTION FOR INVASION OF**
                        **PRIVACY IS SEPARATELY FLAWED**
12

13        There are three essential elements to a claim of invasion of privacy under California law: (1)

14   a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) a serious

15   invasion of the privacy interest.  (*Hill v. NCAA*, 7 Cal.4th 1, 39-40 (1994).)

16        As the California Supreme has explained, not all privacy interests are entitled to

17   constitutional protection:

18        "Privacy concerns are not absolute; they must be balanced against other important
          interests. [N]ot every act which has some impact on personal privacy invokes the
19        protections of our Constitution...[A] court should not play the trump card to protect
          absolutely every assertion of individual privacy." *Id.* at 37.
20

21   It follows that any privacy interest alleged must be specifically identified and carefully compared

22   with competing or countervailing interests, and if those competing interests outweigh the alleged

23   privacy interests, there is no constitutional invasion of the right of privacy.  (*Id.*)  In *Hill*, the

24   Supreme Court found that a student athlete's expectation of privacy is outweighed by the NCAA's

25   legitimate regulatory interest in testing for banned drugs.  (*Id.* at 9.)

26        Even where a legally cognizable privacy interest exists, other factors may affect a person's

27   reasonable expectation of privacy.  (*Heller v. Norcal Mut. Ins. Co.*, 8 Cal.4th 30, 43 (1994).)  For

28   example, the protection afforded to a plaintiff's interest in privacy "must be relative to the customs

1  of the time and place, to the occupation of the plaintiff and to the habits of his neighbors and fellow

2  citizens." (*Id.* at 43-44, *citing* Restatement 2d Torts, § 652D, com. (c).)

3        To the extent the complaint alleges Dr. Grossman invaded Plaintiff's privacy by disclosing

4  to others within the police department his findings regarding Plaintiff's fitness for duty, the claim

5  must be dismissed. Plaintiff's only factual allegations related to Dr. Grossman are that Dr.

6  Grossman stated in writing that Plaintiff lacked integrity and was unfit for duty. (Complaint ¶ 17.)

7  As a matter of law, Plaintiff did not have any reasonable expectation of privacy with regard to this

8  information. Where a fitness-for-duty examination is authorized by law, it cannot constitute an

9  invasion of privacy. Here, the examination was authorized under the Americans with Disabilities

10  Act, as set forth above. Again, Plaintiff's claim that Defendants improperly required him to submit

11  to a psychological evaluation must be rejected based on his admission of a disability, the authority of

12  the City and the Chief of Police, and the nature of Plaintiff's employment as a police officer.

13  Moreover, as discussed above, subdivision (c)(8)(B) of the CMIA specifically authorizes disclosure

14  of employment-related healthcare where it describes functional limitations related to fitness to

15  perform the duties of the employment. (Cal. Civil Code section 56.10(c)(8)(B).) As Dr.

16  Grossman's alleged statements that Plaintiff was unfit for duty and lacking in integrity were clearly

17  authorized, there was no violation of any expectation of privacy as a matter of law.

18                                **V.**

19  **PLAINTIFF HAS FAILED TO STATE A CLAIM FOR INTENTIONAL**
**INFLICTION OF EMOTIONAL DISTRESS**
20

21        To prevail on a claim of intentional infliction of emotional distress ("IIED") a plaintiff must

22  plead and prove (1) extreme and outrageous conduct by the defendant (2) with the intent to cause or

23  reckless disregard of the probability of causing emotional distress, (3) that the plaintiff suffered

24  severe or extreme emotional distress and (4) actual and proximate causation of the emotional distress

25  by the defendant's outrageous conduct. (*Davidson v. City of Westminster*, 32 Cal.3d 197, 209

26  (1982).)

27        In support of his IIED claim Plaintiff alleges that the defendants collectively harassed,

28  discriminated against and retaliated against him and caused his employment to be terminated.

1  (Complaint ¶ 158.)  He further states that such actions "were done with the intent to cause emotional

2  distress or with reckless disregard of the probability of causing Plaintiff emotional distress." (*Id.*)

3       However, Plaintiff has failed to allege facts which amount to outrageous conduct on the part

4  of Dr. Grossman.  To be outrageous, a defendant's conduct must exceed all bounds usually tolerated

5  by a civilized society. (*Id.* at 209.)  The only specific acts alleged against Dr. Grossman are that he

6  wrote to the other defendants that Plaintiff lacked integrity and concluded that Plaintiff was unfit for

7  duty.  Such acts, even if true, do not rise to the level of "extreme and outrageous."  Dr. Grossman

8  conducted only a single evaluation of the Plaintiff with the express purpose of assessing Plaintiff's

9  fitness for duty.  Dr. Grossman's alleged statements that Plaintiff was unfit for duty and lacking in

10 integrity were clearly authorized as a matter of law under Civil Code section 56.10(c)(8)(B), as

11 descriptions of functional limitations.  The authority of police officers to perform their duties

12 "ultimately rests upon 'the community's confidence in the *integrity* of its police force.'" (*Shaddox v.*

13 *Bertani, supra,* 110 Cal.App.4th at p. 1416, emphasis added; citing *Mary M. v. City of Los Angeles,*

14 54 Cal.3d 202, 206-207 (1991).)  Thus, Dr. Grossman's alleged disclosures that Plaintiff was unfit

15 for duty and lacking in integrity served a legitimate purpose, and were not extreme and outrageous as

16 a matter of law.

17       In *McGough v. University of San Francisco*, 214 Cal.App.3d 1577 (1989), the plaintiff, an

18 associate professor, brought claims against a university for denying him tenure.  The plaintiff alleged

19 a cause of action for intentional infliction of emotional distress, among other claims.  In support of

20 this cause of action, the plaintiff alleged that the university had denied him tenure after initially

21 informing him he met the standards for tenure, had refused to conduct an arbitration and impartial

22 hearing, and had told lies regarding him. (*Id.* at p. 409.)  The court of appeal concluded that these

23 facts failed to rise to extreme and outrageous conduct as a mater of law. (*Ibid.*)  The court held,

24 "'Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a

25 civilized community.'[Citations.]  The conduct challenged here does not even arguably meet this

26 standard." (*Id.* at p. 410.)  Similarly, Plaintiff's allegations that Dr. Grossman reported allegedly

27 false findings regarding Plaintiff's fitness for duty cannot even arguably meet the standard for

28 extreme and outrageous conduct.  As in *McGough*, the fact that Plaintiff alleges he was terminated

1  does not elevate the conduct to extreme and outrageous.  Rather, Plaintiff's allegations confirm that

2  Dr. Grossman's conduct was expressly authorized by law, and did not exceed any legitimate

3  purposes.  As such, Plaintiff fails to state a claim for intentional infliction of emotional distress

4  against Dr. Grossman as a matter of law.

5                                          **VI.  CONCLUSION**

6          Based on the foregoing, Defendant Ira Grossman respectfully requests that the Court dismiss

7  all causes of action alleged against him by Plaintiff.

8

9  Dated: April 7, 2008                          WHITE, OLIVER & AMUNDSON

10

11                                          By: s:/Susan L. Oliver

12                                               Susan L. Oliver
                                                 Attorneys for Ira Grossman

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28