1  **DECLUES, BURKETT & THOMPSON, LLP**  EXEMPT FROM FEES PER: <u>GOVERNMENT CODE</u> SECTION 6103
   **Attorneys at Law**
2  JEFFREY P. THOMPSON, Esq. (State Bar No. 136713)
   JENNIFER K. BERNEKING, Esq. (State Bar No. 167172)
3  17011 Beach Blvd., Ste. 400
   Huntington Beach, CA 92647-7455
4  Phone: (714) 843-9444
   Fax: (714) 843-9452
5  e-mail address: jthompson@dbtlaw.com

6  Attorneys for Defendants, **CITY OF IMPERIAL** (a public entity) and
   **MIGUEL COLON** (employee of a public entity)
7

8                   **UNITED STATES DISTRICT COURT**

9                 **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  JOHN ESPINOZA, an individual,       )  CASE NO.: 07CV2218 LAB (RBB)
                                        )
12      *Plaintiff,*                    )  *Complaint Filed: 11/20/07*
                                        )
13      vs.                             )  *Judge Larry A. Burns*
                                        )  *Courtroom 9*
14  CITY OF IMPERIAL, a public entity;  )
    MIGUEL COLON, an individual; IRA    )  **MEMORANDUM OF POINTS AND**
15  GROSSMAN, an individual; and DOES   )  **AUTHORITIES IN SUPPORT OF**
    1 THROUGH 50, inclusive,            )  **ANTI-SLAPP MOTION BY**
16                                      )  **DEFENDANTS CITY AND COLON**
        *Defendants.*                   )
17                                      )  **ORAL ARGUMENT REQUESTED**
                                        )
18                                      )  **Date:  July 14, 2008**
                                        )  **Time:  11:15 a.m.**
19                                      )  **Ctrm:  9**

20

21  ////

22  ////

23  ////

24  ////

25  ////

26  ////

27  ////

28  ////

# TABLE OF CONTENTS

**PAGE(S)**

1.  STATEMENT OF THE CASE. ............................................................... 2

2.  THE COURT MAY PROPERLY STRIKE THIS ACTION
    PURSUANT TO CODE OF CIVIL PROCEDURE §425.16 et
    seq. ....................................................................................................... 3

    A.  Since The Acts Complained of Were Taken in Furtherance
        of Constitutional Rights of Petition or Free Speech in
        Connection with a Public Issue, The Court May Properly
        Grant the Motion to Strike. ....................................................... 4

    B.  Since Plaintiff Cannot Demonstrate That There Is a
        Probability That Plaintiff Will Prevail on the Claim, the
        Court May Properly Grant the Motion to Strike. ....................... 7

        (1)   Because of the unique position in society police
              officers hold, they are subject to special scrutiny. ......... 7

        (2)   Plaintiff was not defamed ............................................. 10

        (3)   Because plaintiff was a public figure, he cannot state
              a cause of action for defamation. ................................. 10

        (4)   Plaintiff cannot recover under the FEHA causes of
              action. ......................................................................... 13

        (5)   Plaintiff cannot establish a failure to accommodate
              under FEHA. ................................................................ 13

        (6)   Plaintiff cannot establish harassment under FEHA. ........... 15

        (7)   Plaintiff cannot prove a prima facie case of
              retaliation under FEHA. ............................................... 16

        (8)   Plaintiff cannot prove a prima facie case of invasion
              of privacy. ................................................................... 16

        (9)   Plaintiff cannot establish a prima facie case of
              wrongful termination. .................................................. 18

        (10)  Plaintiff cannot recover for blacklisting. ...................... 18

        (11)  Plaintiff cannot recover for intentional infliction of
              emotional distress. ...................................................... 19

    C.  This Action Is Barred by Civil Code §47 ............................... 20

    D.  This Action is Barred by Government Code §821.6 ................. 20

3.  CONCLUSION ............................................................................. 23

# TABLE OF AUTHORITIES

                                                                        PAGE(S)

**FEDERAL CASES**

*Garcia v. Williams,* 704 F.Supp. 984 (N.D. Cal. 1988)......................................16

**STATE CASES**

*Avrill v. Superior Court (Eli Home),* 42 Cal.App.4th 1173,

    50 Cal.Rptr.2d 62 (1996)...........................................................6

*Beilenson v. Superior Court,* 44 Cal.App.4th 944, 52 Cal.Rptr.2d 357 (1996).........11, 12

*Briggs v. Eden Council for Hope and Opportunity,* 19 Cal.4th 1106,

    81 Cal.Rptr.2d 471 (1999).....................................................5, 10

*City of Cotati v. Cashman,* 29 Cal.4th 69, 78, 124 Cal.Rptr.2d 519 (2002).................6

*Claudio v. Regents of University of California,* 134 Cal.App.4th 224,

    35 Cal.Rptr.3d 837 (2005)......................................................13

*Cochran v. Cochran,* 65 Cal.App.4th 488, 76 Cal.Rptr.2d 540 (1998).....................19

*County of Riverside v. Superior Court,* 27 Cal.4th 793, 118

    Cal.Rptr.2d 167(2002)...........................................................9

*Cunningham v. Simpson,* 1 Cal.3d 301, 306, 81 Cal.Rptr. 855 (1969).......................10

*Fox Searchlight Pictures, Inc. v. Paladino,* 89 Cal.App.4th 294, 308,

    106 Cal.Rptr.2d at 906 (2001)...................................................6

*Gelfo v. Lockheed Martin Corporation,* 140 Cal.App.4th 34,

    43 Cal.Rptr.3d 874 (2006)..................................................14, 15

*Ghafur v. Bernstein,* 131 Cal.App.4th 1230, 32

    Cal.Rptr.3d 626 (2005).........................................................10

*Green v. Ralee Engineering Co.,* 19 Cal.4th 66, 79,

    78 Cal.Rptr.2d 16 (1998).......................................................18

*Gomes v. Fried,* 136 Cal.App.3d 924, 186 Cal.Rptr. 605 (1982)............................11

*Hagberg v. California Federal Bank FSB,* 32 Cal.4th 350, 360-364,

    7 Cal.Rptr.3d 803 (2004).......................................................20

## TABLE OF AUTHORITIES

**PAGE(S)**

*Janken v. G. M. Hughes Electronics*, 46 Cal.App.4th 55, 53 Cal Rptr.2d 741............15

*Jenkins v. County of Riverside*, 138 Cal.App.4th 593,

     41 Cal.Rptr.3d 686 (2006)....................................................................13

*Kajima Engineering and Construction, Inc. v. City of Los Angeles,*

     95 Cal. App. 4th 921, 927-928, 116 Cal.Rptr.2d 187 (2002)...........................9

*Kayfetz v. State of California*, 156 Cal.App.3d 491, 496,

     203 Cal.Rptr. 33 (1984)....................................................................21

*Kemmerer v. County of Fresno*, 200 Cal.App.3d 1426, 1435-1437,

     1439-1440, 246 Cal.Rptr. 609 (1988)..........................................20, 22

*Kibler v. Northern Inyo County Local Hospital District,*

     39 Cal.4th 192, 199, 46 Cal.Rptr.3d 41 (2006)....................................5, 6

*Lyle v. Warner Brothers Television Productions*, 38 Cal.4th 264,

     42 Cal.Rptr.3d 2 (2006)....................................................................16

*Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 907 [84 Cal.Rptr.2d 303].......................7

*Mary M. v. City of Los Angeles,* 54 Cal.3d 202,

     285 Cal.Rptr. 99 (1991)....................................................................7

*Mulder v. Pilot Air Freight*, 32 Cal.4th 384, 387-388,

     7 Cal.Rptr.3d 828 (2004)..................................................................20

*Pettus v. Cole*, 49 Cal.App.4th 402, 57 Cal.Rptr.2d 46 (1996)...........................17, 18

*Shaddox v. Bertani,* 110 Cal.App.4th 1406, 2 Cal.Rptr.3d 808 (2003)................... 8, 9

*Smith v. Maldonado,* 72 Cal.App.4th 637, 645, 85 Cal.Rptr.2d 397 (1999)...........10

*The Governor Gray Davis Committee v. American Taxpayers Alliance,*

     102 Cal.App.4th 449, 125 Cal.Rptr.2d 534 (2002)....................................3, 4

*Turner v. Anheuser–Busch, Inc.*, 7 Cal.4th 1238, 1257,

     32 Cal.Rptr.2d 223 (1994)..................................................................18

////

CASE NO.:  07CV2218 LAB (RBB)

1

# <u>TABLE OF AUTHORITIES</u>

2
                                                                    **PAGE(S)**

3  *Walker v. Kiousis*, 93 Cal.App.4th 1432, 1439-1440,

4         114 Cal.Rptr.2d 69 (2001)..................................................7, 20

5  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028,

6         32 Cal.Rptr.3d 436 (2005)....................................................16

7

8  ## <u>MISCELLANEOUS</u>

9  California *Civil Code* §45.........................................................10

10  California Civil Code §46.........................................................10

11  California *Code of Civil Procedure* §47..................................19, 20

12  California *Civil Code* §47(b)(3)..................................................8

13  California *Code of Civil Procedure* §425.16.........................3, 6, 23

14  *Government Code* §§ 820.2, 821.6. and 815.2...........................20, 21

15  *Government Code* §1031.......................................................7, 18

16  *Government Code* §1031(d).......................................................8

17  *Government Code* §1031(f)....................................................5, 8

18  *Labor Code* §1050...............................................................18

19  *Penal Code* §832.05................................................................8

20
21
22
23
24
25
26
27
28

1 | **1.    STATEMENT OF THE CASE.**

2 | The CITY OF IMPERIAL (hereinafter referred to as "CITY") allegedly employed

3 | plaintiff JOHN ESPINOZA in 2002 as a police officer.  Plaintiff was allegedly employed

4 | by the CITY for five years, until 2007.  (FAC 3:22-24).  During plaintiff's employment,

5 | plaintiff was allegedly active in the Imperial Police Officers Association, a union.  In fact,

6 | plaintiff was its President.  (FAC 3:27-4:3)

7 | During plaintiff's employment with the CITY, plaintiff underwent a marital

8 | separation and later, a dissolution of his marriage.  Plaintiff allegedly underwent

9 | counseling and therapy for the marital separation and dissolution of his marriage.  (FAC

10 | 4:5-9).  Nonetheless, plaintiff has asserted that the divorce did not affect the performance

11 | of plaintiff's duties.  (FAC 4:6-7)

12 | Plaintiff has asserted that "defendants" interfered with plaintiff's relationship with

13 | his family psychologist, and with plaintiff's family.  (FAC 4:9-10)  Apparently, one of the

14 | ways in which "defendants" interfered was by calling plaintiff's ex-wife down to the

15 | station in order to instigate a confrontation between plaintiff and his ex-wife.  This

16 | confrontation was to be used as grounds for disciplinary action.  (FAC 4:14-17)  Plaintiff

17 | has also alleged that COLON caused a police report be falsified in order to discipline

18 | plaintiff.  (FAC 4:17-19)

19 | Plaintiff has also asserted that "defendants" disclosed private and confidential

20 | information about plaintiff to third parties, including CITY's entire police force.  (FAC

21 | 4:11-12)

22 | In July 2006, plaintiff allegedly requested paternity leave to care for his newborn

23 | child by his girlfriend.  (FAC 4:21-22)  Allegedly shortly thereafter, plaintiff was required

24 | by the CITY, through Police Chief MIGUEL COLON (hereinafter referred to as

25 | "COLON"), to undergo a psychological examination with Psychologist IRA GROSSMAN

26 | (hereinafter referred to as "GROSSMAN").  (FAC 4:22-24).

27 | CITY and COLON allegedly furnished false, defamatory and inaccurate information

28 | to GROSSMAN for the purpose of obtaining GROSSMAN's conclusion that plaintiff was

1   unfit for duty.  (FAC 4:26-28)  Plaintiff has also alleged that GROSSMAN stated in

2   writing to CITY and COLON that plaintiff lacked integrity, and was not fit for duty.  (FAC

3   5:11-14)    Plaintiff has alleged that "defendants" used extraneous information about

4   plaintiff's personal life and thoughts, communicated in confidence to a CITY-aligned

5   psychiatrist in an employment-related examination as a basis for adverse personnel action.

6   (FAC 5:22-25)

7          Plaintiff has alleged that "defendants" perceived plaintiff to be mentally disabled,

8   and on that pretext placed plaintiff on leave.  (FAC 5:1-2)

9          Plaintiff was placed on leave allegedly because he was found unfit for duty.

10  Thereafter, plaintiff allegedly obtained a release to return to work by a psychologist, but

11  the CITY refused to allow him to return to work.  Plaintiff was allegedly terminated on or

12  about June 22, 2007 after unspecified disciplinary actions.  (FAC 5:1-4; 6:17-18).

13         Plaintiff has alleged that he was able to perform the essential job duties of "a CITY

14  position" with or without reasonable accommodation.  (FAC 6:7-8)

15         A Collective Bargaining Agreement allegedly existed between the Imperial Police

16  Officers Association and CITY.  (FAC 5:6-8)  Plaintiff has not alleged exhaustion of

17  administrative remedies available under the Collective Bargaining Agreement.

18  **2.    THE COURT MAY PROPERLY STRIKE THIS ACTION PURSUANT TO**

19       **CODE OF CIVIL PROCEDURE §425.16 et seq.**

20         California *Code of Civil Procedure* §425.16 authorizes a special motion to strike

21  SLAPP suits.  In *The Governor Gray Davis Committee v. American Taxpayers Alliance,*

22  102 Cal.App.4th 449, 125 Cal.Rptr.2d 534 (2002), the Court explained:

23              Section 425.16 articulates a "two-step process for determining whether
24       an action is a SLAPP." (*Navellier v. Sletten* (2002) 29 Cal.4th 82 [124
         Cal.Rptr.2d 530, 52 P.3d 703].]; see also *Paul for Council v. Hanyecz* (2001)
25       85 Cal.App.4th 1356, 1364 [102 Cal.Rptr.2d 864].) " 'First, the court decides
         whether the defendant has made a threshold prima facie showing that the
26       defendant's acts, of which the plaintiff complains, were ones taken in
         furtherance of the defendant's constitutional rights of petition or free speech in
27       connection with a public issue. [Citation.] If the court finds that such a
         showing has been made, then the plaintiff will be required to demonstrate that
28       "there is a probability that the plaintiff will prevail on the claim." [Citations.]
         The defendant has the burden on the first issue, the threshold issue; the
         plaintiff has the burden on the second issue. [Citation.]' [Citation.]" (*Kajima*

3

*Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 928 [116 Cal.Rptr.2d 187]; see also *Paul v. Friedman* (2002) 95 Cal.App.4th 853, 862-863 [117 Cal.Rptr.2d 82].) "Only a cause of action that satisfies both prongs of the anti-SLAPP statute--i.e., that arises from protected speech or petitioning and lacks even minimal merit--is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten*, 29 Cal.4th at p. 89 .)

102 Cal.App.4th at 456, 125 Cal.Rptr.2d 534 .

As demonstrated below, this suit arises out of acts taken in furtherance of the right of petition or free speech, and there is no probability that plaintiff will prevail on the claim. Accordingly, the Court may properly grant this special motion to strike.

**A.    Since The Acts Complained of Were Taken in Furtherance of Constitutional Rights of Petition or Free Speech in Connection with a Public Issue, The Court May Properly Grant the Motion to Strike.**

With respect to establishing that the acts complained of were taken in furtherance of constitutional rights, The *Governor Gray Davis Committee* Court explained:

"[T]he statutory phrase 'cause of action . . . arising from' [in section 425.16, subdivision (b)(1),] means simply that the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69 [124 Cal.Rptr.2d 519, 52 P.3d 695].; *Kajima Engineering & Construction, Inc. v. City of Los Angeles, supra*, 95 Cal.App.4th 921, 928-929; *Chavez v. Mendoza, supra*, 94 Cal.App.4th 1083, 1090.)

"The Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish [his or] her actions are constitutionally protected under the First Amendment as a matter of law." (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 305 [106 Cal.Rptr.2d 906].) "Instead, under the statutory scheme, a court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary. [Citation.] Otherwise, the second step would become superfluous in almost every case, resulting in an improper shifting of the burdens." (*Chavez v. Mendoza, supra*, 94 Cal.App.4th 1083, 1089-1090.))

102 Cal.App.4th at 457-458, 125 Cal.Rptr.2d 534 (emphasis in original.)

Thus, very little is required to carry the moving party's burden. In this case, the suit arises out of the exercise of the constitutional right of free speech or of petition. Plaintiff's

4

First Amended Complaint establishes that this suit is based upon an examination of plaintiff's mental fitness. Since plaintiff was found not to be mentally fit for duty, plaintiff was allegedly terminated. That is, this action arises out of proceedings to determine if plaintiff was fit for duty as a police officer, and the alleged termination of his employment when it was determined that plaintiff was not fit for duty.

The analysis does not change simply because the statements of which plaintiff complains were largely made in private, or in preparation for a formal proceeding. In *Briggs v. Eden Council for Hope and Opportunity,* 19 Cal.4th 1106, 81 Cal.Rptr.2d 471 (1999), the Court stated that "plainly read, section 425.16 encompasses any cause of action against a person arising from any statement or writing made in, or in connection with an issue under consideration or review by, an official proceeding or body," 119 Cal.4th at 1113, 81 Cal.Rptr.2d 471, and the Court later explained:

> As pertinent here, " '[t]he constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action.' " (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784 [54 Cal.Rptr.2d 830], quoting *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 19 [43 Cal.Rptr.2d 350].) Even ECHO's counseling of tenant Bond, apparently, was in anticipation of litigation, and courts considering the question have concluded that "[j]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . . such statements are equally entitled to the benefits of section 425.16." (*Dove Audio, Inc., supra,* at p. 784, citing *Rubin v. Green* (1993) 4 Cal.4th 1187, 1194-1195 [17 Cal.Rptr.2d 828, 847 P.2d 1044] and *Ludwig v. Superior Court, supra,* 37 Cal.App.4th at p. 19; see also *Mission Oaks Ranch, Ltd. v. County of Santa Barbara* (1998) 65 Cal.App.4th 713, 728 [77 Cal.Rptr.2d 1].)

19 Cal.4th at 1115, 81 Cal.Rptr.2d 471.

Here, all of the supposedly improper actions were in a proceeding authorized by law, or were made in connection with an issue under consideration or review of an official proceeding authorized by law. Specifically, this entire suit arises out of the concern that plaintiff was not mentally or emotionally fit for duty. As discussed more fully below, plaintiff must be found to be free from any physical, emotional or mental condition that might adversely affect the exercise of the powers of a peace officer. *Government Code* §1031(f). It is the matters related to that proceeding which give rise to this suit.

5

1  Accordingly, this anti-SLAPP motion is proper.  Accord, *Kibler v. Northern Inyo County*
2  *Local Hospital District,* 39 Cal.4th 192, 199, 46 Cal.Rptr.3d 41 (2006) (Hospital's peer
3  review procedure qualifies as an "official proceeding authorized by law" under
4  §425.16(e)(2).

5  Nor may plaintiff properly argue that portions of the various claims for relief fall
6  outside the reach of an official proceeding authorized by law.  "[T]he statutory phrase
7  'cause of action... arising from' means simply that the defendant's act underlying the
8  plaintiff's cause of action must itself have been an act in furtherance of the right of petition
9  or free speech." *City of Cotati v. Cashman,* 29 Cal.4th 69, 78, 124 Cal.Rptr.2d 519 (2002).
10 And the fact that plaintiff may have included allegations which do not fall within the reach
11 of an anti-SLAPP motion in a cause of action will not defeat the motion. *Fox Searchlight*
12 *Pictures, Inc. v. Paladino,* 89 Cal.App.4th 294, 308, 106 Cal.Rptr.2d at 906 (2001).

13 Furthermore, the anti-SLAPP statute is to be construed broadly.   In *Avrill v.*
14 *Superior Court (Eli Home),* 42 Cal.App.4th 1173, 50 Cal.Rptr.2d 62 (1996) the Court
15 explained examined §425.16(e) and explained:

16     The acts in furtherance of a person's right to free speech specified by the
       statute is preceded by the word "includes." The word "includes" is ordinarily
17     a term of enlargement rather than limitation. (*Ornelas v. Randolph* (1993) 4
       Cal.4th 1095, 1101, 17 Cal.Rptr.2d 594, 847 P.2d 560.) The use of "includes"
18     implies that other acts which are not mentioned are also protected under the
       statute. (*Doyle v. Board of Supervisors* (1988) 197 Cal.App.3d 1358, 1364,
19     243 Cal.Rptr. 572.) We therefore cannot say the Legislature intended to
       exclude private conversations from protection under the statute since the list
20     of covered activities does not act to eliminate such conversations from such
       protection. (See *Ornelas v. Randolph*, *supra*, 4 Cal.4th at p. 1101, 17
21     Cal.Rptr.2d 594, 847 P.2d 560.) Considering the stated purpose of the statute,
       which includes protection of not only the constitutional right to "petition for
22     the redress of grievances," but the broader constitutional right of freedom of
       speech, we conclude the Legislature intended the statute to have broad
23     application.

24 42 Cal.App.4th at 1175-1176, 50 Cal.Rptr.2d 62

25 Given the broad application to be given to §425.16, this action is subject to a special
26 motion to strike.  The principal thrust of this action arises out of official proceeding
27 authorized by law.  This motion may properly be granted.

28 ////

**B.    Since Plaintiff Cannot Demonstrate That There Is a Probability That Plaintiff Will Prevail on the Claim, the Court May Properly Grant the Motion to Strike.**

There is no probability of plaintiff prevailing in this action. Accordingly, the Court may properly grant this motion. In *Walker v. Kiousis*, 93 Cal.App.4th 1432, 114 Cal.Rptr.2d 69 (2001), the Court explained: "To show a probability of prevailing, a plaintiff must make a prima facie showing of facts which would, if proved, support a judgment in his or her favor. (*Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 907 [84 Cal.Rptr.2d 303].)" 93 Cal.App.4th 1439, 114 Cal.Rptr.2d 69. Here, plaintiff cannot carry his prima facie case. On this basis alone, the Court may properly grant this motion.

**(1)    Because of the unique position in society police officers hold, they are subject to special scrutiny.**

The California Supreme Court has noted that police officers hold a special place in society. In *Mary M. v. City of Los Angeles,* 54 Cal.3d 202, 285 Cal.Rptr. 99 (1991) the California Supreme Court examined a case in which the plaintiff received a judgment against the City for her rape by an on-duty police officer. In this context, the Court stated:

> Police officers occupy a unique position of trust in our society. They are responsible for enforcing the law and protecting society from criminal acts. They are given the authority to detain and to arrest and, when necessary, to use deadly force. As visible symbols of that formidable power, an officer is furnished a distinctively marked car, a uniform, a badge, and a gun. Those who challenge an officer's actions do so at their peril; anyone who resists an officer's proper exercise of authority or who obstructs the performance of an officer's duties is subject to criminal prosecution. (Pen.Code, §§ 69, 148.)
>
> When law enforcement officers abuse their authority by committing crimes against members of the community, they violate the public trust. This may seriously damage the relationship between the community and its sworn protectors, by eroding the community's confidence in the integrity of its police force.

54 Cal.3d at 206-207, 285 Cal.Rptr. 99.

No doubt because of this unique position in society, police officers are subject to unusual supervision, limitations and requirements. For example, *Government Code* §1031 peace officers are required to meet certain minimum standards. These minimum standards

7

include: (1) being found to be free from any physical, emotional, or mental condition that might adversely affect the exercise of the powers of a peace officer, §1031(f), and (2) being of good moral character, as determined by a thorough background investigation. *Government Code* §1031(d). While a superficial examination of §1031 might seem to indicate these requirements apply only to prospective employees, that is not the case. *Penal Code* §832.05 addresses emotional and mental examinations for evaluation of officers, as well as recruits.

Similarly, it avails plaintiff nothing to assert that family difficulties, as opposed to professional difficulties, gave rise to the evaluation. In *Shaddox v. Bertani,* 110 Cal.App.4th 1406, 2 Cal.Rptr.3d 808 (2003), the Court examined a case in which a dentist reported his belief that a police officer had a problem with prescription drugs, and the officer sought to recover for a supposed violation of the Confidentiality of Medical Information Act. The Court examined the applicability of *Civil Code* §47(b)(3), and in doing so explained:

> Shaddox argues that the privilege should be limited to situations where a citizen reports suspected misconduct or wrongdoing while an officer is on duty and performing official duties. It should not apply here, he submits, because he "was off-duty, unarmed, and in civilian dress when he consulted Bertani in a private dental appointment" and "not in Bertani's dental office on official police business." We believe the distinction Shaddox suggests is contrary to sound public policy. There is nothing to recommend limiting the privilege to reports of an officer's misconduct only when committed during official hours of employment.

> "Police officers occupy a unique position of trust in our society. They are responsible for enforcing the law and protecting society from criminal acts. They are given the authority to detain and to arrest and, when necessary, to use deadly force"; this authority ultimately rests upon "the community's confidence in the integrity of its police force." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 206-207, 285 Cal.Rptr. 99, 814 P.2d 1341.) To protect that confidence, an officer is judged as much by private conduct as by on-duty performance. (E.g., *Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 571-572, 273 Cal.Rptr. 584, 797 P.2d 608; *Cranston v. City of Richmond* (1985) 40 Cal.3d 755, 770, fn. 13, 221 Cal.Rptr. 779, 710 P.2d 845.) That a person's unfitness for law enforcement can clearly be found in off-duty behavior has become an established incident of public employment. (E.g., *Cranston v. City of Richmond, supra,* [officer discharged for off-duty reckless driving]; *Cleu v. Board of Police Commissioners* (1906) 3 Cal.App. 174, 176, 84 P. 672 [officer dismissed for failing to pay debts].) The occasional unfounded calumny is accepted as a price for public confidence in the institution. (E.g., *Pena v. Municipal Court,*

*supra*, 96 Cal.App.3d 77, 82, 157 Cal.Rptr. 584; *Imig v. Ferrar, supra*, 70 Cal.App.3d 48, 56, 138 Cal.Rptr. 540.)

110 Cal. App. 4th at 1416-1417, 2 Cal.Rptr.3d 808.

Here, just as in *Shaddox*, plaintiff's off-duty behavior is relevant. Allegations that plaintiff's personal situation -- including plaintiff's emotional state during his divorce -- were proper subjects to be considered.

Nor can plaintiff prevail on the theory that information about him was distributed to prospective employers. Persons being considered for employment as police officers are subject to special scrutiny. In *County of Riverside v. Superior Court*, 27 Cal.4th 793, 118 Cal.Rptr.2d 167(2002) the California Supreme Court explained:

> Section 1031, subdivision (d) provides that "peace officers" shall "[b]e of good moral character, as determined by a thorough background investigation." This statute reflects the public's interest in high quality law enforcement personnel. The law contemplates that new applicants be subject to the background investigation before they are hired, and to encourage candor from informants, employers (including the County) routinely ask applicants to waive any right they might have to review background investigation materials. Prospective employers may also make express assurances of confidentiality to informants, and the County did so in this case. If the background investigation uncovers information that reflects negatively on an applicant's suitability for law enforcement work, the prospective employer can, of course, reject the applicant on that basis.
>
> To facilitate this background investigation, section 1031.1 requires an applicant's employers and former employers to disclose "employment information" to a requesting law enforcement agency. (§ 1031.1, subd. (a).) Section 1031.1 addresses itself to "applicants not currently employed as a peace officer," but the parties agree that similar background investigations are routinely done for existing peace officers who are seeking transfer from one law enforcement agency to another or to a new position within the same agency.

72 Cal.4th at 798-799, 118 Cal.Rptr.2d 167.

Of course, the allegations of plaintiff's First Amended Complaint appear to be directed at such supposed disclosures of employment records.

When one takes into consideration the unique position of police officers in society, and the special care which is taking in vetting them, it is apparent that plaintiff cannot carry his burden of proof.

////

### (2)    Plaintiff was not defamed.

Of course, a defamation cause of action is the archetype of an SLAPP suit. See, e.g., *Kajima Engineering and Construction, Inc. v. City of Los Angeles,* 95 Cal. App. 4th 921, 927-928, 116 Cal.Rptr.2d 187 (2002), *Briggs, supra,* 19 Cal.4th 1106, 81 Cal.Rptr.2d 471. Here, plaintiff cannot prevail on the defamation cause of action.

Plaintiff's defamation cause of action is fatally flawed. Defamation involves the publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage. See *Civil Code* §§45, 46; see also *Smith v. Maldonado,* 72 Cal.App.4th 637, 645, 85 Cal.Rptr.2d 397 (1999). Publication, which may be written or oral, is defined as a communication to some third person who understands both the defamatory meaning of the statement and its application to the person to whom reference is made. *Cunningham v. Simpson*, 1 Cal.3d 301, 306, 81 Cal.Rptr. 855 (1969).

Plaintiff cannot prove a false statement of fact. At best, plaintiff will be able to disagree with GROSSMAN's conclusion that plaintiff was not fit for duty.

Accordingly, plaintiff cannot prove a prima facie case of defamation. The Court may properly grant this motion.

### (3)    Because plaintiff was a public figure, he cannot state a cause of action for defamation.

In *Ghafur v. Bernstein,* 131 Cal.App.4th 1230, 32 Cal.Rptr.3d 626 (2005), the Court explained:

> To recover for defamation relating to their official conduct, public officials must show that the statements were made with knowledge of their falsity or reckless disregard for their truth. (*New York Times Co. v. Sullivan, supra,* 376 U.S. at pp. 279 280, 84 S.Ct. 710.) This rule extends to "anything which might touch on an official's fitness for office." (*Garrison v. Louisiana* (1964) 379 U.S. 64, 77, 85 S.Ct. 209, 13 L.Ed.2d 125.) The rule reflects our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." (*New York Times Co. v. Sullivan, supra,* 376 U.S. at p. 270, 84 S.Ct. 710.) Public officials are held to a different rule than private individuals because they assume a greater risk of public scrutiny by seeking public office, and generally have greater access to channels of effective communication to rebut false charges. (*Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 344, 94 S.Ct. 2997, 41 L.Ed.2d 789.)

Whether someone is a "public official" for this purpose is determined according to federal standards. (*Rosenblatt v. Baer* (1966) 383 U.S. 75, 84, 86 S.Ct. 669, 15 L.Ed.2d 597; *Kahn v. Bower* (1991) 232 Cal.App.3d 1599, 1610, 284 Cal.Rptr. 244.) Under those standards, "the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." (*Rosenblatt v. Baer, supra*, 383 U.S. at p. 85, 86 S.Ct. 669.) The designation applies where the individual's "position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all governmental employees...." (*Id.* at p. 86, 86 S.Ct. 669.) "The employee's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy." (*Id.* at p. 86 87, fn. 13, 86 S.Ct. 669.)

Who qualifies as a "public official" has been litigated in many cases throughout the country (see Annot. (1996) 44 A.L.R.5th 193 [collecting decisions] ), and the issue has arisen a number of times in California. Under our precedents, a child welfare worker (*Kahn v. Bower, supra*, 232 Cal.App.3d at p. 1613, 284 Cal.Rptr. 244), a police officer (*Gomes v. Fried* (1982) 136 Cal.App.3d 924, 934, 186 Cal.Rptr. 605), and a former city attorney and lawyer for a city redevelopment agency (*Weingarten v. Block* (1980) 102 Cal.App.3d 129, 139, 162 Cal.Rptr. 701) have been found to be public officials.

131 Cal.App.4th 1230, 1236-1237, 32 Cal.Rptr.3d 626

One of the cases cited in the above quotation, *Gomes v. Fried*, 136 Cal.App.3d 924, 186 Cal.Rptr. 605 (1982), expressly found that a patrol officer was a public official for purposes of a defamation suit. The Court stated: "the Courts have uniformly held that a patrolman or low-level police officer is a "public official" for the purpose of the New York Times privilege." 136 Cal.App.3d at 933, 186 Cal.Rptr. 605 (citing numerous cases.)

As a public figure, plaintiff must prove actual malice by clear and convincing evidence. The Court in *Beilenson v. Superior Court*, 44 Cal.App.4th 944, 52 Cal.Rptr.2d 357 (1996) explained:

As a public figure, Sybert had the burden of showing, by clear and convincing evidence, that the objectionable statements had been made with actual malice. (Elec.Code, § 20501; *Harte Hanks Communications, Inc. v. Connaughton* (1989) 491 U.S. 657, 659, 109 S.Ct. 2678, 2681 2682, 105 L.Ed.2d 562, 571; *Evans v. Unkow, supra*, 38 Cal.App.4th at p. 1496, 45 Cal.Rptr.2d 624.) Malice may be established by showing that petitioners had recklessly disregarded the truth. (*St. Amant v. Thompson* (1968) 390 U.S. 727, 732, 88 S.Ct. 1323, 1326, 20 L.Ed.2d 262, 267.)

11

1

2

3

4

      The clear and convincing standard requires that the evidence be such as to command the unhesitating assent of every reasonable mind. (*In re David C.* (1984) 152 Cal.App.3d 1189, 1208, 200 Cal.Rptr. 115.)   Actual malice cannot be implied and must be proven by direct evidence.   (*Time v. Hill* (1967) 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456; *Sanborn v. Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 413, 134 Cal.Rptr. 402, 556 P.2d 764.)

5

44 Cal.App.4th at 950, 52 Cal.Rptr.2d 357.

6

7

8

      Thus, plaintiff must prove actual malice with clear and convincing evidence.   It must be so clear that reasonable minds cannot differ, and the proof cannot be by an inference drawn from the evidence.   Here, plaintiff cannot carry this burden.

9

10

11

      Further, mere imprecision in expressing oneself, or reaching an incorrect conclusion, is not sufficient to carry plaintiff's burden of proof.   After explaining the clear and convincing proof standard, the *Beilenson* Court continued:

12

13

14

15

16

17

      As mentioned, our Constitution affords protection to statements made during the course of debate on political issues.   (*Brown v. Hartlage* (1982) 456 U.S. 45, 61, 102 S.Ct. 1523, 1533, 71 L.Ed.2d 732, 746; *Patriot Co. v. Roy* (1971) 401 U.S. 265, 271 272, 91 S.Ct. 621, 625 626, 28 L.Ed.2d 35, 41.)   In the words of Justice Hugo Black, "... it is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions." (*Bridges v. California* (1941) 314 U.S. 252, 270, 62 S.Ct. 190, 197, 86 L.Ed. 192, 207.)   Under the notions of the First Amendment, "[h]owever pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." (*Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 339 340, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789.)

18

19

20

21

22

23

24

      In *Bose Corp. v. Consumers Union of U.S., Inc.*, *supra*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502, the actionable statements consisted of a writer's unbridled and inaccurate description of a sound system.   The Supreme Court noted that the "language chosen was 'one of a number of possible rational interpretations' of an event 'that bristled with ambiguities' and descriptive challenges for the writer." (*Id.*, at p. 512, 104 S.Ct. at p. 1966, 80 L.Ed.2d at p. 525.)   Nonetheless, because it was protected speech, plaintiff was required to "demonstrate with clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of the statement." (*Id.*, at p. 511, fn. 30, 104 S.Ct. at p. 1965, fn. 30, 80 L.Ed.2d at p. 524, fn. 30.)

25

26

27

28

      The Supreme Court found the writer's description of the speaker system to be inaccurate but, nonetheless, was deserving of the protection of the First Amendment.   " '[E]rroneous statement is inevitable in free debate, and ... must be protected if the freedoms of expression are to have the "breathing space" that they "need ... to survive." ' " [*New York Times Co. v. Sullivan*, *supra*, 376 U.S. at pp. 271 272, 84 S.Ct. at p. 721, 11 L.Ed.2d at p. 701.]" (*Bose Corp. v. Consumers Union of U.S. Inc.*, *supra*, 466 U.S. at p. 513, 104 S.Ct. at p. 1966, 80 L.Ed.2d at p. 525.)

44 Cal.App.4th at 950-951, 52 Cal.Rptr.2d 357.

Here, plaintiff cannot point to even fiery language, or hyperbole. Plaintiff can only take issue with the conclusion. Plaintiff cannot demonstrate defamation. The Court may properly grant this motion.

### (4) Plaintiff cannot recover under the FEHA causes of action.

In *Jenkins v. County of Riverside*, 138 Cal.App.4th 593, 41 Cal.Rptr.3d 686 (2006), the Court explained:

> Under the FEHA, plaintiff can establish a prima facie case of discrimination by proving that: (1) she suffered from a disability; (2) with or without reasonable accommodation, she could perform the essential functions of the employment position she held or desired; and (3) that she was subjected to an adverse employment action because of her disability. (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 254, 102 Cal.Rptr.2d 55.) At a motion for summary judgment in a discrimination case, the defendant "may meet its burden by showing that one or more of these prima facie elements is lacking, *or that the adverse employment action was based on legitimate nondiscriminatory factors.* [Citation.]' [¶] If the employer has met its burden by showing a legitimate reason for its conduct, the employee must demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory animus.... " (*Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1038, 128 Cal.Rptr.2d 660, italics added.)

138 Cal.App.4th at 603, 41 Cal.Rptr.3d 686.

Here, as pointed out above, GROSSMAN found plaintiff to be unfit for duty. One could reasonably conclude that plaintiff cannot perform the essential functions of the position with or without a reasonable accommodation. But in any case a legitimate nondiscriminatory reason exists for CITY's and COLON's alleged action -- plaintiff's inability, under §1031, to act as a peace officer.

Therefore, the Third and Fifth Causes of Action are fatally defective.

### (5) Plaintiff cannot establish a failure to accommodate under FEHA.

In *Claudio v. Regents of University of California,* 134 Cal.App.4th 224, 35 Cal.Rptr.3d 837 (2005), plaintiff brought suit on the theory that he had been improperly terminated as a veterinary technician by the Regents as a result of developing a disease which made him unusually susceptible to catching diseases from animals, the Court explained:

*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 102 Cal.Rptr.2d 55 (*Jensen*) said, "the employer cannot prevail on summary judgment on a claim of failure to reasonably accommodate unless it establishes through undisputed facts that (1) reasonable accommodation was offered and refused;  (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation;  or (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." (*Id.* at p. 263, 102 Cal.Rptr.2d 55.)

"Holding a job open for a disabled employee who needs time to recuperate or heal is in itself a form of reasonable accommodation and may be all that is required where it appears likely that the employee will be able to return to an existing position at some time in the foreseeable future. [Citation.]" (*Jensen, supra*, 85 Cal.App.4th at p. 263, 102 Cal.Rptr.2d 55.)

"It is an employee's responsibility to understand his or her own physical or mental condition well enough to present the employer at the earliest opportunity with a concise list of restrictions which must be met to accommodate the employee." (*Jensen, supra*, 85 Cal.App.4th at p. 266, 102 Cal.Rptr.2d 55.)

"[I]t is the responsibility of both sides to keep communications open and neither side has a right to obstruct the process." (*Jensen, supra*, 85 Cal.App.4th at p. 266, 102 Cal.Rptr.2d 55.)

134 Cal.App.4th at 243-244, 35 Cal.Rptr.3d 837.

In *Gelfo v. Lockheed Martin Corporation*, 140 Cal.App.4th 34, 43 Cal.Rptr.3d 874 (2006), the Court explained:

In addition to a general prohibition against unlawful employment discrimination based on disability, FEHA provides an independent cause of action for an employer's failure to provide a reasonable accommodation for an applicant's or employee's known disability. (§ 12940, subd. (a), (m).) "Under the express provisions of the FEHA, the employer's failure to reasonably accommodate a disabled individual is a violation of the statute in and of itself." (*Jensen, supra*, 85 Cal.App.4th at p. 256, 102 Cal.Rptr.2d 55; *Bagatti v. Department of Rehabilitation* (2002) 97 Cal.App.4th 344, 357, 118 Cal.Rptr.2d 443 [same] (*Bagatti*).) Similar reasoning applies to violations of Government Code section 12940, subdivision (n), for an employer's failure to engage in a good faith interactive process to determine an effective accommodation, once one is requested. (§ 12940, subd. (n); *Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 243, 35 Cal.Rptr.3d 837.)

Two principles underlie a cause of action for failure to provide a reasonable accommodation.    First, the employee must request an accommodation. (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 954, 62 Cal.Rptr.2d 142.)    Second, the parties must engage in an interactive process regarding the requested accommodation and, if the process fails, responsibility for the failure rests with the party who failed to participate in good faith.  (See *Jensen, supra*, 85 Cal.App.4th at p. 266, 102 Cal.Rptr.2d

14

55.)    While a claim of failure to accommodate is independent of a cause of action for failure to engage in an interactive dialogue, each necessarily implicates the other.

140 Cal.App.4th at 54, 43 Cal.Rptr.3d 874.

The *Gelfo* Court explained what was required for an employee to request an accommodation by stating:

> Each party must participate in good faith, undertake reasonable efforts to communicate its concerns, and make available to the other information which is available, or more accessible, to one party.    Liability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith. (See *Jensen, supra*, 85 Cal.App.4th at p. 266, 102 Cal.Rptr.2d 55; see also *Allen v. Pacific Bell* (9th Cir.2003) 348 F.3d 1113, 1115[ADA].)

140 Cal.App.4th at 62, fn.22, 43 Cal.Rptr.3d 874.

Here, the finding that plaintiff was unfit for duty prevented his employment as a police officer.    In order to establish a prima facie case, plaintiff will be required to demonstrate what reasonable accommodation could have been made, that plaintiff sought such an accommodation, that the accommodation was available, and that it was improperly refused.

### (6)    Plaintiff cannot establish harassment under FEHA.

None of the actions of which plaintiff has complained amount to harassment under FEHA.    In *Janken v. GM Hughes Electronics,* 46 Cal.App.4th 55, 53 Cal.Rptr.2d 741 (1996), the Court explained:

> Both parties present as an example of harassment California Code of Regulations, title 2, section 7287.6, subdivision (b)(1).    This regulation provides that harassment includes, but is not limited to, verbal epithets or derogatory comments, physical interference with freedom of movement, derogatory posters or cartoons, and unwanted sexual advances.    As the regulation implies, harassment consists of a type of conduct not necessary for performance of a supervisory job.    Instead, harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives.    Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job. (Cf. *Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 301, 48 Cal.Rptr.2d 510, 907 P.2d 358 [sexual assault not motivated by desire to serve employer's interest]; *Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 47 Cal.Rptr.2d 478, 906 P.2d 440 [sexual harassment by deputy sheriff not within scope of employment].)

15

46 Cal.App.4th 63-64, 53 Cal.Rptr.2d 741 (footnotes omitted.)

To establish a prima facie claim for workplace harassment, a plaintiff must plead a sufficient level of harassing conduct – objectively and subjectively – which is severe (e.g., threatening, humiliating, etc.) and based on an improper motive. Accord, *Lyle v. Warner Brothers Television Productions*, 38 Cal.4th 264, 284-285, 42 Cal.Rptr.3d 2 (2006).

Here, plaintiff cannot present a prima facie case of harassment under FEHA.

### (7)    Plaintiff cannot prove a prima facie case of retaliation under FEHA.

Just as plaintiff cannot present a prima facie case of discrimination under FEHA, plaintiff cannot present a prima facie case of retaliation. In *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 32 Cal.Rptr.3d 436 (2005), the Court explained:

> Past California cases hold that in order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a "protected activity," (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. (*Iwekaogwu v. City of Los Angeles* (1999) 75 Cal.App.4th 803, 814 815, 89 Cal.Rptr.2d 505; *Flait v. North American Watch Corp.* (1992) 3 Cal.App.4th 467, 476, 4 Cal.Rptr.2d 522 [adopting the title VII (Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.) burden shifting analysis of *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802 805, 93 S.Ct. 1817, 36 L.Ed.2d 668].) Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 68, 105 Cal.Rptr.2d 652.) If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation "drops out of the picture," and the burden shifts back to the employee to prove intentional retaliation. (*Ibid.*)

36 Cal.4th at 1042, 32 Cal.Rptr.3d 436.

Of course, here, based upon §1031, and the unique position police officers hold in society, plaintiff cannot present a prima facie case of retaliation under FEHA.

### (8)    Plaintiff cannot prove a prima facie case of invasion of privacy.

Under California Law, plaintiff has failed to allege a cause of action for invasion of privacy. In *Garcia v. Williams,* 704 F.Supp. 984 (N.D. Cal. 1988), the Court noted:

> California courts have categorized this tort into four distinct forms of intrusion: (1) unreasonable intrusion upon the plaintiff's seclusion or solitude, or into his or her private affairs; (2) publicity which places the plaintiff in a false light; (3) public disclosure of true, embarrassing private facts about the

plaintiff; and (4) appropriation of plaintiff's name or likeness for commercial purposes. *Porten v. University of San Francisco*, 64 Cal.App.3d 825, 828, 134 Cal.Rptr. 839 (1976); *Johnson v. Harcourt, Brace, Jovanovich, Inc.*, 43 Cal.App.3d 880, 887, 118 Cal.Rptr. 370 (1974).

704 F.Supp. at 1000, fn. 17.

The Court then went on to explain:

The parties agree that as to any claim of invasion of privacy not involving physical intrusion, the tort requires public disclosure. *Maheu v. CBS, Inc.*, 201 Cal.App.3d 662, 247 Cal.Rptr. 304, 311 (1988) (elements of invasion of privacy include (1) public disclosure of (2) private facts which are (3) offensive and objectionable to a reasonable person of ordinary sensibilities).

704 F.Supp. at 1000.

But, even if there had been publication, plaintiff's Ninth Cause of Action would fail. In *Pettus v. Cole*, 49 Cal.App.4th 402, 57 Cal.Rptr.2d 46 (1996), the Court examined a suit in which plaintiff sought to recover for an invasion of privacy, under Article I, section 1 of the California Constitution.  The Court explained:

Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." (Italics added.) In *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 26 Cal.Rptr.2d 834, 865 P.2d 633 (hereinafter Hill), our Supreme Court definitively held that the privacy clause of article I, section 1, of the state Constitution "creates a right of action against private as well as government entities." (*Hill, supra*, 7 Cal.4th at p. 20, 26 Cal.Rptr.2d 834, 865 P.2d 633; see also *Chico Feminist Women's Health Center v. Scully* (1989) 208 Cal.App.3d 230, 242, 256 Cal.Rptr. 194.) The *Hill* court also defined the elements of a claim for invasion of the state constitutional right of privacy, as follows:  "(1) a legally protected privacy interest;   (2) a reasonable expectation of privacy in the circumstances;  and (3) conduct by defendant constituting a serious invasion of privacy."  (7 Cal.4th at pp. 39-40, 26 Cal.Rptr.2d 834, 865 P.2d 633.)

49 Cal.App.4th 402, 57 Cal.Rptr.2d 46.

The *Pettus* Court then went on to explain:

As to the employers' asserted "need" for detailed medical information about their employees, we recognize that employers have important and legitimate interests in maintaining an efficient and productive work force. Employers also have substantial latitude in regulating their employees' on-the-job conduct and working relationships.  They are, thus, entitled to notice when an employee cannot perform some or all of the essential job functions

17

1      assigned to that employee and, if the employee hopes to avail himself of paid
2      leave benefits, to such information as is necessary to make an even-handed
     decision about the employee's eligibility for such leave. But again, a medical
3      opinion by an employer-aligned physician as to the existence of "functional
     limitations," and as to the "industrial versus nonindustrial" nature of the
4      injury, is what the employer "needs" to know to make that eligibility
     determination.

5   49 Cal.App.4th at 446, 57 Cal.Rptr.2d 46.

6      Thus, it appears that CITY had a legitimate countervailing interest in plaintiff's

7   mental state. In light of *Government Code* §1031, that interest is compelling. Plaintiff

8   cannot establish a prima facie case.

9          **(9)**   **Plaintiff cannot establish a prima facie case of wrongful**

10          **termination.**

11      Plaintiff cannot present a prima facie case of wrongful termination in violation of

12   public policy. Such causes of action are limited to "those claims finding support in an

13   important public policy based on a statutory or constitutional provision," *Green v. Ralee*

14   *Engineering Co.*, 19 Cal.4th 66, 79, 78 Cal.Rptr.2d 16 (1998), and no cause of action is

15   shown by vague charges of illegal activities which put the defendant and the Court "in the

16   position of having to guess at the nature of the public policies involved, if any." *Turner v.*

17   *Anheuser–Busch, Inc.*, 7 Cal.4th 1238, 1257, 32 Cal.Rptr.2d 223 (1994) (summary

18   judgment was properly granted.)

19      Here, plaintiff will have to present a prima facie case that his alleged termination

20   was in violation of an important public policy based on a statutory or constitutional

21   provision. In light of the authorities set forth above, plaintiff cannot do so. In fact the

22   opposite appears to be true. The Tenth Cause of Action cannot survive this motion.

23          **(10)**   **Plaintiff cannot recover for blacklisting.**

24      In the Twelfth Cause of Action, plaintiff seeks to recover for blacklisting.

25   Blacklisting is proscribed by *Labor Code* §1050. Section 1050 provides:

26      Any person, or agent or officer thereof, who, after having discharged an
     employee from the service of such person or after an employee has
27      voluntarily left such service, by any misrepresentation prevents or attempts to
     prevent the former employee from obtaining employment, is guilty of a
28      misdemeanor.

1 | Here, plaintiff will be unable to make a prima facie case regarding any misrepresentation

2 | to prevent plaintiff from obtaining employment. Accordingly, this motion may properly

3 | be granted.

4 |         **(11)  Plaintiff cannot recover for intentional infliction of emotional**

5 |               **distress.**

6 |     Plaintiff cannot recover for intentional infliction of emotional distress. CITY's and

7 | COLON's alleged acts are not extreme and outrageous.

8 |     In *Cochran  v. Cochran*, 65 Cal.App.4th 488, 76 Cal.Rptr.2d 540 (1998) the Court

9 | explained:

> The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct. (KOVR-TV, Inc. v. Superior Court (1995) 31 Cal.App.4th 1023, 1028, 37 Cal.Rptr.2d 431 (hereafter KOVR-TV).) Resolution of this matter turns on the first element--whether or not the conduct alleged was sufficiently extreme and outrageous.
>
> In order to meet the first requirement of the tort, the alleged conduct " '... must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.' [Citation.] Generally, conduct will be found to be actionable where the 'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" ' (Rest.2d Torts, § 46, com. d.)" (KOVR-TV, supra, 31 Cal.App.4th at p. 1028, 37 Cal.Rptr.2d 431.) That the defendant knew the plaintiff had a special susceptibility to emotional distress is a factor which may be considered in determining whether the alleged conduct was outrageous. (Angie M. v. Superior Court (1995) 37 Cal.App.4th 1217, 1226, 44 Cal.Rptr.2d 197; Rest.2d Torts, § 46, com. f.)
>
> There is no bright line standard for judging outrageous conduct and " '... its generality hazards a case-by-case appraisal of conduct filtered through the prism of the appraiser's values, sensitivity threshold, and standards of civility. The process evoked by the test appears to be more intuitive than analytical....' [Citation.]" (KOVR-TV, supra, 31 Cal.App.4th at p. 1028, 37 Cal.Rptr.2d 431.) Even so, the appellate courts have affirmed orders which sustained demurrers on the ground that the defendant's alleged conduct was not sufficiently outrageous. (See, e.g., Ankeny v. Lockheed Missiles & Space Co. (1979) 88 Cal.App.3d 531, 536-537, 151 Cal.Rptr. 828.)

26 | 65 Cal.App.4th at 494, 76 Cal.Rptr.2d 540.

27 |     Here, plaintiff cannot demonstrate any extreme and outrageous action by CITY or

28 | by COLON. The Thirteenth Cause of Action is fatally defective.

**C.    This Action Is Barred by Civil Code §47**

*Code of Civil Procedure* §47 provides in relevant part:

A privileged publication or broadcast is one made:

(a) In the proper discharge of an official duty.

(b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure, except as follows:

...

An absolute privilege attaches to publications made in any legislative or judicial proceeding or in any other official proceeding authorized by law. It applies to bar all tort actions, except for malicious prosecution. *Walker v. Kiousis*, 93 Cal.App.4th 1432, 1439-1440, 114 Cal.Rptr.2d 69 (2001). Thus to the extent plaintiff is claiming a supposedly defamatory statement which was made in any official proceeding authorized by law, this action is barred.

The official proceedings absolute privilege applies to a communication concerning possible wrongdoing, made to an official governmental agency such as a local police department, if the communication is designed to prompt action by that entity. *Hagberg v. California Federal Bank FSB*, 32 Cal.4th 350, 360-364, 7 Cal.Rptr.3d 803 (2004); *Mulder v. Pilot Air Freight*, 32 Cal.4th 384, 387-388, 7 Cal.Rptr.3d 828 (2004).

Here, to the extent the allegedly any defamatory statement was made in a legislative or judicial proceeding, or in an effort to communicate regarding possible wrongdoing to an official governmental entity, even if plaintiff is able to demonstrate the actual malice necessary to permit him – as a public figure – to bring an action, the cause of action is barred by *Civil Code* §47.

The Court may properly grant this motion.

**D.    This Action is Barred by Government Code §821.6.**

Furthermore, CITY and COLON enjoy immunities provided by the Tort Claims Act (*Government Code* §810, *et seq.*). For the reasons explained in *Kemmerer v. County of*

CASE NO.: 07CV2218 LAB (RBB)

1 | *Fresno*, 200 Cal.App.3d 1426, 1435-1437, 1439-1440, 246 Cal.Rptr. 609 (1988), CITY
2 | and COLON are statutorily immune in this case.  The immunities in the Tort Claims Act
3 | (*Government Code* §810, *et seq.*) apply and provide complete immunities.  See, *e.g.,*
4 | *Government Code* §§ 820.2, 821.6. and 815.2.

5 |     The *Kemmerer* Court explained that *Government Code* §821.6 provides that a public
6 | employee is not liable for injury caused by instituting or prosecuting any judicial or
7 | administrative proceeding within the scope of his or her employment, even if he acts
8 | maliciously and without probable cause.  The Court also noted that *Government Code*
9 | §820.2 provides that a public employee is not liable for an injury caused by his or her act
10 | or omission where the act or omission was the result of the exercise of the discretion
11 | vested in him or her, whether or not such discretion be abused, except where a statue
12 | provides otherwise.

13 |     The Court went on to find that although §§821.6 and 820.2 expressly immunize only
14 | the employee, if the employee is immune, so too is the public entity.  *Id.* at 1435 (citing
15 | *Gov.Code*, §815.2, subd. (b), and *Kayfetz v. State of California*, 156 Cal.App.3d 491, 496,
16 | 203 Cal.Rptr. 33 (1984).)

17 |     The *Kemmerer* Court went on to explain:

18 |     Although Government Code section 821.6 has primarily been applied to
19 | immunize prosecuting attorneys and other similar individuals, this section is
not restricted to legally trained personnel but applies to all employees of a
20 | public entity. (*Johnson v. City of Pacifica* (1970) 4 Cal.App.3d 82, 85, 84
Cal.Rptr. 246.)    Neither is the section "limited to suits for damages for
21 | malicious prosecution, although that is a principal use of the statute."
(*Kayfetz v. State of California, supra,* 156 Cal.App.3d at p. 497, 203 Cal.Rptr.
22 | 33; accord *Citizens Capital Corp. v. Spohn* (1982) 133 Cal.App.3d 887, 889,
184 Cal.Rptr. 269.)

23 |     In *Kayfetz*, the court applied Government Code section 821.6 to a
24 | situation in which plaintiff, a doctor, had sued the State of California, the
Board of Medical Quality Assurance, the Physicians Diversion Program and
25 | the diversion program administrator for damages arising from the publication
of disciplinary action taken against him.  The court held the publication was
26 | an integral part of the prosecution process and that "Government Code section
821.6 cloaks the action in immunity ..." (*id.*   156 Cal.App.3d at p. 494, 203
27 | Cal.Rptr. 33) and therefore the trial court had properly sustained the
defendants' demurrer without leave to amend.

28 |     Similarly, in *Citizens Capital Corp. v. Spohn, supra,* the provision was
successfully applied in a situation where a litigant brought an action against

the Director of the Department of Consumer Affairs who had instituted proceedings to revoke his license to operate a collection agency. The plaintiff alleged that the department had conspired with others to destroy plaintiff's business as a collection agency by instituting widespread publicity charging plaintiff with improper conduct in operating its business and instituting proceedings to revoke plaintiff's license. The court affirmed an order dismissing the complaint after sustaining a general demurrer without leave to amend. The court held that under Government Code section 821.6 the defendants were immune from liability for the publicity reporting the results of their *official investigation* of collection agencies and license revocation actions based on those investigations. (*Id.* 133 Cal.App.3d at p. 889, 184 Cal.Rptr. 269.)

In the instant case, Kelley initiated formal disciplinary proceedings against Kemmerer after Velasquez conducted an investigation and filed an inter office memorandum detailing the investigation and recommending dismissal of Kemmerer. The report was dated April 27, 1984. As the Director of the Department of Social Services, the institution of proceedings by Kelley would be within the scope of his employment. The procedures included a formal notice and opportunity for hearing with full appeal rights to the Fresno County Civil Service Commission. The investigation by Assistant Director Velasquez was an essential step to the institution of the disciplinary process and is also cloaked with immunity. The investigation, the preliminary notice and the proceedings before the civil service commission come within the scope of an "administrative proceeding" as that term is used in Government Code section 821.6. It follows that pursuant to section 821.6 Kelley, Velasquez and the County are immune from tort liability for any acts done to institute and prosecute the disciplinary proceeding.

200 Cal.App.3d at 1436-1437, 246 Cal.Rptr. 609.

Here, it appears that plaintiff is proceeding under the misapprehension that the occurrences relating to the termination of plaintiff's employment could give rise to a cause of action. Pursuant to *Kemmerer*, no cause of action exists.

As if that were not enough, the *Kemmerer* Court pointed out that the discretionary decision immunity also barred any potential cause of action. The Court stated:

We turn now to Government Code section 820.2. This court has explained that "[g]overnmental immunity for liability for discretionary acts performed by public officers and employees in the exercise of their discretion has long been recognized in this state by judicial interpretation and is based on salutary public policy." (*Burgdorf v. Funder* (1966) 246 Cal.App.2d 443, 448, 54 Cal.Rptr. 805.) In *Burgdorf* we went on to state:

"Generally speaking, a discretionary act is one which requires the exercise of judgment or choice. Discretion has also been defined as meaning equitable decision of what is just and proper under the circumstances. [Citation.] It is not, however, possible to set forth a definitive rule which will resolve every case, and other factors must also be considered as, for example, the importance to the public of the function involved. [Citation.]" (*Id.* at p. 449, 54 Cal.Rptr. 805.)

22

1

2

3

      The importance of public policy in the determination of the difference between discretionary acts, which are accorded immunity, and ministerial acts, which are not, was discussed in *Lipman v. Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224, 11 Cal.Rptr. 97, 359 P.2d 465.   There our Supreme Court explained that

4

5

6

7

8

      "[b]ecause of important policy considerations, the rule has become established that government officials are not personally liable for their discretionary acts within the scope of their authority even though it is alleged that their conduct was malicious. [Citations.]  The subjection of officials, the innocent as well as the guilty, to the burden of a trial and to the danger of its outcome would impair their zeal in the performance of their functions, and it is better to leave the injury unredressed than to subject honest officials to the constant dread of retaliation. [Citation.]" (*Id.* at p. 229, 11 Cal.Rptr. 97, 359 P.2d 465.)

9

200 Cal.App.3d at 1437, 246 Cal.Rptr. 609.

10

11

12

    Here, it seems apparent that the discretionary decision immunity bars this action. Plaintiff cannot establish a prima facie case, but even if plaintiff could do so, complete defenses bar this action.

13

**3.**    **CONCLUSION**

14

15

16

17

    As demonstrated above, plaintiff's causes of action may properly be stricken pursuant to *Code of Civil Procedure* §425.16.  Furthermore, complete defenses exist.  The Court may properly grant this motion and strike claims for relief specified in the notice of motion as to CITY and COLON.

18

19

Dated: May 16, 2008        **DECLUES, BURKETT & THOMPSON, LLP**

20

21

22

23

BY: s/J. Thompson
      JEFFREY P. THOMPSON, Esq.
      JENNIFER K. BERNEKING, Esq.
      Attorneys for Defendants, **CITY OF IMPERIAL**, (a public entity) and **MIGUEL COLON** (employee of a public entity)

24

25

26

27

28

**PROOF OF SERVICE**
**(C.C.P. section 1013a(3))**

STATE OF CALIFORNIA   )
                             ) SS.
COUNTY OF ORANGE   )

       I am over the age of 18 and I am not a party to the within action.  I am employed by **DECLUES, BURKETT & THOMPSON, LLP,** in the County of Orange, at 17011 Beach Blvd., Ste. 400, Huntington Beach, California, 92647-5995.

       On **May 16, 2008,** I served the attached: **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANTI-SLAPP MOTION BY DEFENDANTS CITY AND COLON**

On the interested parties in this action by:

XXX Placing true copies thereof in sealed envelopes, addressed as described below.

Vincent J. Tien
Law Offices of Vincent J. Tien
17291 Irvine Blvd., Suite 150
Tustin, CA 92780

White, Oliver & Amundson
550 West C Street, Suite 950
San Diego, CA 92101
(619) 239-0300

XXX BY MAIL:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the United States Postal Service on that same day, with postage thereon fully prepaid at Huntington Beach, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

      BY PERSONAL SERVICE: I caused such an envelope to be delivered by hand to the offices of the addressees.

      BY FEDERAL EXPRESS (Receipt/Airbill No.: _____ )

      BY FACSIMILE TRANSMISSION: From FAX NO. (714) 843-9452 to FAX No.: _____ at or about <u>Time</u>, directed to <u>Name</u>.  The facsimile machine I used complied with Rule 2003(3), and no error was reported by the machine.  Pursuant to Rule 2005(I), I caused the machine to print a record of the transmission, a copy of which is attached to this declaration.

XXX FEDERAL: I declare I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

      I declare, under penalty of perjury under the laws of the State of California, that the above is true and correct.

      Executed on **May 16, 2008,** at Huntington Beach, California.

s/ _____
Carolyn Rodriguez

24