1
2
3
4
5
6
7          **UNITED STATES DISTRICT COURT**
8          **SOUTHERN DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| JOHN ESPINOZA, an individual, | CASE NO. 07cv2218-LAB (RBB) |
| Plaintiff, | **ORDER GRANTING DEFENDANT GROSSMAN'S:** |
| vs. | **(1) ANTI-SLAPP MOTION TO STRIKE;** |
| | **AND** |
| CITY OF IMPERIAL, a public entity, *et al.*, and DOES 1 through 50, inclusive, | **(2) MOTION TO DISMISS** |
| Defendants. | [Dkt Nos. 8, 10] |

        This action arises out of the termination of plaintiff John Espinoza's ("Espinoza")
employment as a City of Imperial police officer, after approximately five years of service. His
First Amended Complaint ("FAC") alleges causes of action against the City of Imperial
("City"), City police chief Miguel Colon ("Colon"), and Dr. Ira Grossman, a psychiatrist
retained by the City and Colon to examine Espinoza associated with their fitness
investigation and employment termination decision. Dr. Grossman's report and subsequent
hearing testimony opined Espinoza was unfit to continue to serve as a police officer. This
matter is before the court on defendant Grossman's: (1) Motion To Strike FAC pursuant to
California's Anti-SLAPP statute, CAL. CODE CIV. P. § 425.16 (Dkt No. 8); and (2) Motion To
Dismiss, pursuant to FED. R. CIV. P. ("Rule") 12(b)(6) for failure to state a claim against him
and on grounds of absolute privilege pursuant to CAL. CIV. CODE §§ 47(b), (c).

1    Of the thirteen (13) causes of action alleged in the FAC, Espinoza names Dr.

2 Grossman in three: Ninth Cause of Action for Invasion of Privacy under the California

3 Constitution, Art. I § 1; Eleventh Cause of Action for Defamation and Libel; and Thirteenth

4 Cause of action for Intentional Infliction of Emotional Distress. Espinoza filed Oppositions

5 to both motions, and Dr. Grossman filed Replies. The court finds the issues presented

6 appropriate for decision on the papers and without oral argument, pursuant to Civil Local

7 Rule 7.1(d)(1). For the reasons discussed below, the motions are **GRANTED**.

8  **I.    BACKGROUND**

9    The FAC alleges, in pertinent part, Espinoza was hired as a City of Imperial police

10 officer in about 2002. He was experiencing marital difficulties, including separation and

11 ultimate dissolution of the marriage. *See* FAC ¶ 11. He sought psychological counseling

12 and therapy for himself and family members to help cope with his personal situation. Id.

13 Defendants contend questions arose regarding Espinoza's continuing fitness to serve as a

14 police officer and his mental competence. Anti-SLAPP Mot. Reply 1:22-23. In about July

15 2006, he requested paternity leave to care for a newborn child he had with his girlfriend.

16 FAC ¶ 13. "Shortly thereafter Plaintiff was wrongfully required, on pain of termination, by

17 CITY, to undergo an unwarranted psychological examination conducted by defendants

18 COLON and GROSSMAN." Id. "Defendant [*sic*] CITY and COLON, furnished false,

19 defamatory and inaccurate information to GROSSMAN for the purpose of obtaining

20 GROSSMAN's conclusion that Plaintiff was unfit for duty." FAC ¶ 14. "Defendant

21 GROSSMAN, among other things, made false statements regarding Plaintiff, in writing, to

22 the other Defendants, that Plaintiff lacked integrity, and falsely concluded that Plaintiff was

23 unfit for duty." FAC ¶ 17 (emphasis added). As reasonably extractable from the FAC, only

24 the following additional allegations may pertain to Dr. Grossman:

25         18.    Defendants violated Plaintiff's constitutional right to
              privacy, as he had legally cognizable interests in
26            preserving the privacy of his family affairs, medical
              history, and psychological profile, which expectation was
27            reasonable, and Defendants' actions seriously interfered
              with Plaintiff's informational privacy rights and rights to
28            autonomy in medical treatment.

19. Defendants unduly intruded and interfered with Plaintiff's legally protected privacy interests by, among other things, using extraneous information about Plaintiff's personal life and thoughts, communicated in confidence to a CITY-aligned psychiatrist in an employment-related examination, as basis [*sic*] for adverse personnel action.

20. Defendants perceived Plaintiff as having mental disabilities and/or medical conditions caused by performing his work. Alternatively, Defendants perceived Plaintiff to have non-industrial disabilities and/or medical conditions.

. . .

23. During his employment, ESPINOZA was subjected to adverse employment action, harassment, and hostile work environment, primarily by his supervisor, Defendant COLON, but with the ratification and conspiracy of the other Defendants. Plaintiff was denied assignments that he was qualified for. Defendants interfered with Plaintiff's personal life, invaded Plaintiff's privacy by disclosing confidential information regarding Plaintiff to third parties, . . . all apparently in order to manufacture false grounds to terminate Plaintiff. . . .

. . .

119. The psychological examination lacked job-relatedness and business necessity and was unreasonable.

. . .

138. Defendant GROSSMAN. among other things, made false statements regarding Plaintiff, in writing, to the other Defendants, that Plaintiff lacked integrity, and falsely concluded that Plaintiff was unfit for duty.

. . .

158. Plaintiff is informed and believes that the actions of Defendants, and each of them, in harassing Plaintiff, discriminating against Plaintiff, retaliating against Plaintiff, and causing Plaintiff's employment to be terminated in contravention of public policy, as alleged herein, was intentional, extreme, outrageous and were done with the intent to cause emotional distress or with reckless disregard of the probability of causing Plaintiff emotional distress.

## II.    ANTI-SLAPP MOTION

### A.    <u>Legal Standards</u>

"The anti-SLAPP statute was enacted in 1992 for the purpose of providing an efficient procedural mechanism to obtain an early and inexpensive dismissal of nonmeritorious claims 'arising from any act' of the defendant 'in furtherance of the person's right of petition or free

1  speech under the  United States or California Constitution in connection with a public issue

2  . . . ." <u>Martinez v. Metabolife International, Inc.</u>, 113 Cal.App.4th 181, 186 (2003), *quoting*

3  CAL. CODE CIV. P. § 425.16(b)(1) ("Section 425.16").  Courts must broadly construe the Anti-

4  SLAPP statute.  <u>Annette F. v. Sharon S.</u>, 119 Cal.App.4th 1146, 1160 (2004).  A cause of

5  action arising from protected communication "shall be subject to a special motion to strike,

6  unless the court determines that the plaintiff has established that there is a probability that

7  the plaintiff will prevail on the claim." <u>DaimlerChrysler Motors Co. v. Lew Williams, Inc.</u>, 144

8  Cal.App.4th 344, 350 (2006), *quoting* Section 425.16(b)(1).

9  The court engages in a two-step process in deciding an Anti-SLAPP motion:

10           First, the court decides whether the defendant has made a
              threshold showing that the challenged cause of action is one
11           arising from protected activity. . . . If the court finds that such a
              showing has been made, it then determines whether the plaintiff
12           has demonstrated a probability of prevailing on the claim.

13  <u>Equilon Enterprises v. Consumer Cause, Inc.</u>, 29 Cal.4th 53, 67 (2002); *see* <u>Rusheen v.</u>

14  <u>Cohan</u>, 37 Cal.4th 1048, 1055-56 (2006) (summarizing the governing principles).

15  Only a cause of action that satisfies both prongs of the Anti-SLAPP statute is subject

16  to being stricken under that theory.  <u>Nygard, Inc. v. Uusi-Kerttula</u>, 159 Cal.App.4th 1027,

17  1035 (2008).  The defendant must initially establish the suit is within the class of suits subject

18  to the statute.   "In deciding whether the initial 'arising from' requirement is met, a court

19  considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which

20  the liability or defense is based." <u>Navellier v. Sletten</u>, 29 Cal.4th 82, 89 (2002) (citation

21  omitted).  "The anti-SLAPP statute's definitional focus is not on the form of the plaintiff's

22  cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted

23  liability -- and whether that activity constitutes protected speech or petitioning." <u>Id.</u> at 92.

24  Section 425.16 specifies four categories of conduct that qualify for anti-SLAPP protection,

25  two of which are pertinent here:[1]

26  \\

27  _____

28           [1]   The other two contexts are: statements made in a public forum; and "any conduct in
         furtherance of the exercise of . . . the constitutional right of free speech in connection with a public
         issue or an issue of public interest."  Section 425.16(e)(3),(4).

> As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) **any written or oral statement or writing** made before a legislative, executive, or judicial proceeding, **or in any other official proceeding authorized by law**; (2) **any written or oral statement or writing** made in connection with an issue under consideration or review by a legislative, executive, or judicial body, **or any other official proceeding authorized by law**; . . .

Section 425.16(e) (emphasis added).

Categories of protected speech include communications made "before" or "in connection with" official proceedings. Reply 2:24-27, *quoting* Section 425.16(e)(1),(2). The term "official proceeding" is "interpreted broadly to protect communications to or from government officials which may precede the initiation of formal proceedings." Slaughter v. Friedman, 32 Cal.3d 149, 156 (1982); Computerxpress, Inc. v. Jackson, 93 Cal.App.4th 993, 1009 (2001) ("a communication to an official administrative agency . . . designed to prompt action by that agency is as much a part of the 'official proceeding' as a communication made after the proceeding has commenced") (citation omitted).

In ruling on a special motion to strike, the court accepts as true all evidence favorable to the plaintiff. Consumer Justice Center v. Trimedica International, Inc., 107 Cal.App.4th 595, 605 (2003). When defendants fail to meet their initial burden, the court need not consider whether plaintiff has demonstrated a probability of success before denying a special motion to strike. A.F. Brown Elec. Contractor, Inc. v. Rhino Elec. Supply, Inc., 137 Cal.App.4th 1118, 1130 (2006); *see* Navellier, 29 Cal.4th at 89 ("Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute -- *i.e.*, that arises from protected speech or petitioning *and* lacks even minimal merit -- is a SLAPP, subject to being stricken under the statute"); Martinez, 113 Cal.App.4th at 193 (unless defendants carry their burden at the first step of the anti-SLAPP analysis to show the suit arises from acts in furtherance of their protected activity, the court must deny the motion). Conversely, if the plaintiff fails at step two on its shifted burden, the court must grant the motion.

In order to meet his threshold burden, Dr. Grossman must demonstrate Espinoza's challenged claims are *based on* conduct in the exercise of his protected rights. Computer

1  Xpress, Inc. v. Jackson, 93 Cal.App.4th 993, 1001-03 (2001); *see* City of Cotati v. Cashman,

2  29 Cal.4th 69, 78 (2002) ("[t]hat a cause of action may have been triggered by protected

3  activity does not entail that it is one arising from such").  "[T]he statutory phrase 'cause of

4  action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause

5  of action must *itself* have been an act in furtherance of the right of petition or free speech."

6  City of Cotati, 29 Cal.4th at 78; *see also* Equilon, 29 Cal.4th at 67-68 (in the anti-SLAPP

7  context, the critical point is whether plaintiff's cause of action itself was *based on* an act in

8  furtherance of defendant's right of petition or free speech).  That burden is met if the

9  defendant demonstrates "the act underlying plaintiff's case fits one of the categories spelled

10  out in section 425.16, subdivision (e). . . ."  Braun v. Chronicle Publishing Co., 52

11  Cal.App.4th 1036, 1043 (1997).  If the activity asserted to be protected under the Anti-

12  SLAPP statute occurs in the context of an official or public proceeding, as stated in Section

13  425(b)(1) or (2), there is no additional requirement that it be connected with an issue of

14  public importance.  Garretson v. Post, 156 Cal.App.4th 1508, 1515 (2007); *see* Gallanis-

15  Politis v. Medina, 152 Cal. App.4th 600, 612 n.8 (2007) (the "motive" for protected activity

16  does not affect whether the Anti-SLAPP statute applies).

17  **B.  Merits**

18  There appears to be no dispute Dr. Grossman was retained by the City and Colon to

19  perform a psychological evaluation of Espinoza in connection with a contemplated personnel

20  action.  The FAC allegations against him arise from "statements in a psychological report to

21  the City and its police chief, Colon, regarding Plaintiff's lack of fitness to continue to serve

22  as a police officer" and, Dr. Grossman consequently contends the suit arises from "his role

23  in making communications to [a] public entity related to official proceedings" aimed at

24  determining whether Espinoza should continue his public employment.  Mot. 3:15-21.  He

25  seeks Anti-SLAPP dismissal on grounds his challenged communications fall within one or

26  both of the first two categories of protected activity codified in Section 425.16(e).

27  Dr. Grossman asserts Espinoza cannot maintain his claims of defamation, invasion

28  of privacy, or intentional infliction of emotional distress against him because he merely

1   conducted a solicited psychological evaluation of Espinoza and forwarded his professional

2   opinion to the other defendants regrading their employee's fitness to continue work as a

3   police officer.  He contends he "was properly making communications in connection with

4   official proceedings related to investigation of Plaintiff's fitness and potential termination of

5   his employment from the City."  Mot. P&A 1:5-9.  He characterizes those communications

6   as constituting "precisely the type of free speech that is protected by" the Anti-SLAPP

7   statute, warranting the striking of the FAC claims against him.

8           Espinoza would have the court approach his case as involving an employment matter

9   raising no protected speech issues.  However, his counsel acknowledges Dr. Grossman's

10  conduct was associated with an official proceeding:  "On or about November 15, 2006, I

11  examined Dr. Grossman at a termination hearing before the City of Imperial. . . ."  Tien Decl.

12  ¶ 2, and Tien Decl. Exh. 1 (transcript excerpts from Espinoza's November 15, 2007

13  termination hearing before the City Council).  All Dr. Grossman is alleged to have done is

14  perform the examination to which Espinoza submitted at the behest of his public employer,

15  issue a report of his findings back to the public agency, and testify on that issue at the civil

16  service hearing.  The nature of all that conduct is inherently communicative.  The court finds

17  Espinoza's claims against Dr. Grossman thus arise from protected activity associated with

18  an administrative proceeding and are properly construed as communications within the

19  scope of Anti-SLAPP protections, irrespective of whether his statements were "false."  *See*

20  Gallanis-Politis, 152 Cal.App.4th 600 (finding a county employee's retaliation lawsuit against

21  her supervisors was subject to an Anti-SLAPP motion to strike because the plaintiff's

22  allegations of unprotected activity were incidental to her principal claim that supervisors

23  conducted a pretextual investigation and prepared a false report against her in response to

24  her pending lawsuit); *see* O'Shea v. General Tel. Co., 193 Cal.App.3d 1040, 1049 n.7 (1987)

25  ("Because of our resolution of this appeal on the basis of an absolute privilege," in the

26  context of communications associated with a background investigation prior to hiring a law

27  enforcement officer, "it is not necessary for us to decide the issue of whether the statements

28  made by respondent were true or substantially true").

1    The court accordingly finds at step one of the analysis Dr. Grossman has carried his

2  burden to show Espinoza's causes of action against him arise from protected activity.  The

3  challenged contents of his report embodying his conclusions must be construed as occurring

4  within the confines of a personnel action and communicated to the public employer as part

5  of a formal investigation.

6    Addressing step two, once protected activity has been found, to avoid anti-SLAPP

7  dismissal, the plaintiff must demonstrate the complaint is both legally sufficient and

8  supported by a sufficient *prima facie* showing of facts, crediting the plaintiffs evidence, to

9  sustain a favorable judgment in plaintiff's favor, despite the protected nature of the

10  communication.  Sycamore Ridge Apartments, LLC v. Naumann, 157 Cal.App.4th 1385

11  (2007).  Although a plaintiff need only make a minimal showing of merit for a claim to survive

12  an Anti-SLAPP motion, the court finds Espinoza has not demonstrated a probability of

13  prevailing on any of his claims against Dr. Grossman.  He has not shown how the

14  psychologist's professional assessment he was unfit to continue working as a police officer

15  is "provably false," as would be required to prevail his defamation claim.  There is no

16  showing Dr. Grossman circulated his report to anyone other than to Espinoza's employers

17  in the context of public employment termination proceedings.  In addition, as also discussed

18  below, the court finds the communications qualify for protection from civil liability under the

19  communications privilege codified at CAL. CIV. CODE §§ 47(b)-(c), precluding Espinoza from

20  satisfying his step two Anti-SLAPP burden.

21    For all the foregoing reasons, the court finds Dr. Grossman prevails at step one of

22  the Anti-SLAPP analysis because the communications at issue are protected speech, and

23  Espinoza has not carried his burden at step two to demonstrate his claims are both (1)

24  legally sufficient and (2) supported by a *prima facie* showing of facts sufficient to

25  demonstrate a possibility of prevailing despite the protected nature of the communications.

26  The court accordingly **GRANTS** Dr. Grossman's Anti-SLAPP Motion and strikes the First

27  Amended Complaint allegations against him, and orders Dr. Grossman dismissed as a party

28  to this action, without leave to attempt a third time to state claims against that defendant.

1          **C.    Attorneys' Fees And Costs**

2          A party prevailing on a Motion To Strike under California's Anti-SLAPP statue is

3     entitled to recover its attorneys' fees and costs.  Section 425.16(c);[2] Ketchum v. Moses, 24

4     Cal.4th 1122, 1131 (2001) ("any SLAPP defendant who brings a successful motion to strike

5     is entitled to mandatory attorney fees").  The attorneys' fees provision is broadly construed

6     to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses

7     incurred in extricating himself or herself from a baseless lawsuit, even if the Anti-SLAPP

8     motion is granted only as to some of a plaintiff's claims.  *See* Wanland v. Law Offices of

9     Mastigni, Holstedt & Chiurazzi, 141 Cal.App.4th 15 (2006); *see also* New.Net, Inc. v.

10    Lavasoft, 356 F.Supp.2d 1090, 1115 (C.D. Cal. 2004);  Robertson v. Rodriguez, 36

11    Cal.App.4th 347, 362 (1995).  The lodestar method applies to the determination of a proper

12    attorneys' fees award for an Anti-SLAPP prevailing party.  Mann v. Quality Old Time Service,

13    Inc., 139 Cal.App.4th 328, 342 (2006); Ketchum, 24 Cal.4th at 1236.

14         As the court has granted Dr. Grossman's Motion To Strike in its entirety, disposing of

15    all Espinoza's FAC claims against him, Dr. Grossman is entitled on that basis to recover his

16    attorneys' fees and costs.  Dr. Grossman represents all of his fees and costs incurred in

17    defending this litigation are properly recoverable, not merely those he incurred in brining the

18    Anti-SLAPP Motion.  However, he has also filed a separate Motion To Dismiss, containing

19    some arguments overlapping with those in his Anti-SLAPP Motion (in particular, but not

20    limited to, those going to privilege), which the court finds could create a redundant recovery

21    were he permitted to separately recover for the all time and costs associated with each

22    motion.  Accordingly, Dr. Grossman shall support his claimed fees and costs in a manner

23    demonstrating the requested amount is not based on unnecessary or duplicative work.  *See*

24    Wilkerson v. Sullivan, 99 Cal.App.4th 443 (2002).  He shall proceed by noticed motion to

25    substantiate the appropriate amount of his entitled recovery.  *See* American Humane Ass'n

26    v. Los Angeles Times Communications, 92 Cal.App.4th 1095, 1102-03 (2001).

27
_____

28         [2]  "In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs.. . ."  Section 425.16(c).

- 9 -                                    07cv2218

1  **II.    MOTION TO DISMISS**

2      **A.    <u>Legal Standards</u>**

3      A Rule12(b)(6) motion to dismiss tests the sufficiency of the complaint.  <u>Navarro v.</u>

4  <u>Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a)(2) requires only "a short and plain

5  statement of the claim showing that the pleader is entitled to relief," in order to "give the

6  defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell</u>

7  <u>Atlantic Corp. v. Twombly</u>, -- U.S. --, 127 S.Ct. 1955, 1964 (May 21, 2007), *quoting* <u>Conley</u>

8  <u>v. Gibson</u>, 355 U.S. 41, 47 (1957).  "While a complaint attacked by a Rule 12(b)(6) motion

9  to dismiss does not need detailed factual allegations," those allegations must be enough to

10  raise a right to relief above the speculative level."  <u>Bell Atlantic</u>, 127 S.Ct. at 1964-65

11  (citations omitted). "[S]ome threshold of plausibility must be crossed at the outset" before a

12  case is permitted to proceed. <u>Bell Atlantic</u>, 127 S.Ct. at 1966 (citation omitted), *abrogating*

13  *the formulation in* <u>Conley</u>, 355 U.S. at 45-46.[3]  A proper Rule 12(b)(6) dismissal does not

14  require appearance, beyond a doubt, that plaintiff can prove *no* set of facts in support of a

15  claim that would entitle the plaintiff to relief.  Rather, "when the allegations in a complaint,

16  however true, could not raise a claim of entitlement to relief, this basic deficiency should .

17  . . be exposed at the point of minimum expenditure of time and money by the parties and the

18  court." <u>Id.</u> (citations omitted).

19      Dismissal is warranted where the complaint lacks a cognizable legal theory.

20  <u>Robertson v. Dean Witter Reynolds, Inc.</u>,749 F.2d 530, 534 (9th Cir. 1984); *see* <u>Neitzke v.</u>

21  <u>Williams</u>, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on

22  the basis of a dispositive issue of law").  Alternatively, a complaint may be dismissed where

23  it presents a cognizable legal theory, but fails to plead essential facts under that theory.

24  <u>Robertson</u>, 749 F.2d at 534; *see* <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th

25

26      [3]    <u>Conley</u>'s "no set of facts" language "has earned its retirement. The phrase is best
27  forgotten as an incomplete, negative gloss on an accepted pleading standard:  once a claim has
been stated adequately, it may be supported by showing any set of facts consistent with the
28  allegations in the complaint." <u>Bell Atlantic</u>, 127 S.Ct. at 1969.  "It is not . . . proper to assume that
[the plaintiff] can prove facts that it has not alleged or that the defendants have violated the [laws]
in ways that have not been alleged." <u>Id.</u> at 1969 n.8 (citation omitted).

1    Cir. 1988).  When a Rule 12(b)(6) motion is granted, leave to amend is ordinarily denied only

2    when it is clear that the deficiencies of the complaint cannot be cured by amendment.

3    DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

4         In making Rule 12(b)(6) rulings, the court assumes the truth of all factual allegations

5    and construes them in the light most favorable to the nonmoving party, including all

6    reasonable inferences to be drawn from the facts alleged.  Cahill v. Liberty Mut. Ins. Co., 80

7    F.3d 336, 337-38 (9th Cir. 1996);  Cedars-Sinai Medical Center v. National League of

8    Postmasters, 497 F.3d 972, 975 (9th Cir. 2007).  However, legal conclusions need not be

9    taken as true merely because they are cast in the form of factual allegations.  Roberts v.

10   Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987); Western Mining Council v. Watt, 643 F.2d

11   618, 624 (9th Cir. 1981); see also Transphase Systems, Inc. v. Southern California Edison

12   Co., 839 F.Supp. 711, 718 (C.D. Cal. 1993) (the court does not "need to accept as true

13   conclusory allegations . . . or unreasonable inference") (citation omitted); see also Warren

14   v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).  In examining a claim's

15   sufficiency, as opposed to its substantive merits, "a court may [typically] look only to the face

16   of the complaint. . . ." Van Buskirk v. Cable Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).

17        **B.    Communications Privilege**

18        Dr. Grossman argues in both his Anti-SLAPP Motion and his Motion To Dismiss his

19   communications to the City and Colon were privileged, foreclosing civil liability.  A "privileged

20   publication or broadcast" is one made ". . . (b) In any (1) legislative proceeding, (2) judicial

21   proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or

22   course of any other proceeding authorized by law . . . ," with enumerated exceptions not

23   applicable in these circumstances. CAL. CIV. CODE § 47(b) ("Section 47"); see Shaddox v.

24   Bertani, 110 Cal.App.4th 1406, 1415  (2003) (a dentist's communication with a police officer

25   patient's departmental superiors to report a suspicion the patient had a prescription drug

26   problem, leading to an internal investigation and officer discipline for improper conduct, was

27   protected by the litigation privilege of Section 47(b) and not actionable as a violation of

28   medical privacy laws, foreclosing the officer's subsequent lawsuit against the dentist).

"[S]ection 47(b) operates to bar civil liability for any tort claim based upon a privileged communication, with the exception of malicious prosecution. . . ." <u>Hagberg v. California Federal Bank</u>, 32 Cal.4th 350, 375 (2004), <em>citing</em> <u>Silberg v. Anderson</u>, 50 Cal.3d 205, 215-16 (1990); <em>see also</em> <u>Navarro v. IHOP Properties, Inc.</u> , 134 Cal.App.4th 834, 844 (2005) (stating with citations to authority the absolute privilege of Section 47 applies to all torts other than malicious prosecution); <em>see also</em> <u>Shaddox</u>, 110 Cal.App.4th at 1415.

"Any doubt as to whether the [Section 47] privilege applies is resolved in favor of applying it." <u>Adams v. Superior Court</u>, 2 Cal.App.4th 521, 529 (1992). Dr Grossman demonstrates his report and testimony were all associated with his solicited professional opinions of Espinoza's fitness to serve as a police officer and fall within the litigation or official proceeding privilege articulated at Cal. Civil Code §§ 47(b),[4] (c),[5] establishing a statutory defense. Reports about the fitness of a police officer are absolutely privileged under Section 47(b).[6] Espinoza's attempt to distinguish <u>Shaddox</u> is unpersuasive. California courts have recognized public policy concerns associated with law enforcement personnel.

> Police officers occupy a unique position of trust in our society. They are responsible for enforcing the law and protecting society from criminal acts. They are given the authority to detain and to arrest and, when necessary, to use deadly force.[7]

---

[4]  "A privileged publication or broadcast is one made: . . . (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to [Cal. Code Civ. P. §§ 1084, <em>et seq.</em>, applicable to writs of mandamus] . . . ." Cal. Civ. Code § 47.

[5]  "A privileged publication or broadcast is one made: . . . (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information. . . ." Cal. Civ. Code § 47.

[6]  "[T]his authority uniquely rests upon 'the community's confidence in the integrity of its police force.' [Citations omitted.] . . . . California has a policy of encouraging reports concerning suspected misconduct **or unfitness** by law enforcement officers. . . . Complaints are regarded as privileged by section 47, subdivision (b)(3). . . . Complaints **or communications** regarding an officer's fitness **or** performance of duty are firmly established as being within this privilege." <u>Shaddox</u>, 110 Cal.App.4th at 1415-16 (emphasis added).

[7]  Dr. Grossman's Motion elaborates the state Legislature's comprehensive statutory scheme associated with the qualifications of law enforcement officers, in light of their unique role and positions of trust, including components to shield from liability persons who make negative or even

Mary M. v. City of Los Angeles, 54 Cal.3d 202, 206, 207 (1991) (their authority rests on "the community's confidence in the integrity of its police force"); *see* Shaddox, 110 Cal.App.4th at 1416-17 (to protect public confidence, "an officer is judged as much by private conduct as by on-duty performance. . . . That a person's unfitness for law enforcement can clearly be found in off-duty behavior has become an established incident of public employment. . . . The occasional unfounded calumny is accepted as a price for public confidence in the institution") (citations omitted).

In summary, Dr. Grossman's communications are covered by the Section 47(b) privilege because it is well settled the privilege "applies to any communication whether or not it amounts to a publication . . . , that it applies not only to judicial proceedings but to all truth-seeking inquiries, including legislative and other official proceedings . . ., and although originally limited to defamation actions, that it now applies to virtually all other torts . . . ." Crowley v. Katleman. 8 Cal.4th 666, 695 (1994). The absolute privilege of Rule 47(b) extends to neutral third party experts who make evaluations in reference to judicial or quasi-judicial proceedings. *See* Gootee v. Lightner, 224 Cal.App.3d 587 (1990) (the Section 47 testimonial privilege bars tort claims against an expert witness whose sole purpose was to evaluate for purposes of testifying); Howard v. Drapkin, 222 Cal.App.3d 843, 860 (1990) (finding Section 47 privilege covered a psychologist's communication made in the course of a judicial or quasi-judicial proceeding associated with a marital dissolution, and finding the privilege applies whether or not the publication was made outside the formal proceeding when the communication was logically related to the action, the psychologist participated in the proceeding, and the communication was made to achieve the objects of the proceeding).

Dr. Grossman also argues his report and testimony are protected by the "common interest" privilege of Section 47(c) because his communications to supervisory personnel

---

false statements about law enforcement personnel, including their fitness for duty. *See, e.g.*, O'Shea v. General Tel. Co., 193 Cal.App.3d 1040, 1048-49 (1987) (recognizing a public "duty for citizens to communicate openly and freely with an investigating officer seeking background information on a candidate for employment with a public law enforcement agency," so that the Civil Code 47(b) "privilege under these circumstances is a necessary element of the need for law enforcement to hire [or retain] persons who are qualified to protect the public").

1  within the police department were made solely to further those defendants' interest in

2  assessing Espinoza's fitness for duty.  The City and Colon had a legitimate interest in

3  obtaining the assessment, as his employer and highest-level supervisor, and they retained

4  Dr. Grossman to conduct a psychological evaluation for that purpose.  Espinoza does not

5  support his conclusory FAC allegations of malice on the part of Dr. Grossman, or that his

6  report was disseminated other than to the City and Colon for purposes of informing their

7  personnel action.  Moreover, there is no indication Dr. Grossman extended either his

8  examination of Espinoza or his report of his findings and professional opinion beyond the

9  expectations of privacy associated with the particular examination Espinoza participated in

10 for the understood purpose, distinguishing cases such as Pettus v. Cole, 49 Cal.App.4th

11 402, 442 (1996) (holding a doctor's disclosure of detailed medical and psychiatric information

12 to that plaintiff's private employer following an examination associated with a disability leave

13 policy was not adequately justified because the "detailed psychiatric information [the

14 employer] requested and obtained from [the doctors], and ultimately used to make adverse

15 personnel decisions about Pettus, was *far more* than the employer needed to accomplish

16 its legitimate objectives," in the context of a private employer's personnel actions involving

17 "no dispute resolution mechanism, no hearings") (emphasis in original).  For all the forgoing

18 reasons, the court finds Dr. Grossman's report and testimony were privileged

19 communications, foreclosing liability.

20        **C.    Statement Of Claims**

21        Even had the court not found Espinoza's FAC claims against Dr. Grossman are

22 subject to Anti-SLAPP dismissal and the activity at issue involved privileged communications

23 barring Espinoza's claims against him, the court also finds Espinoza has failed to state a

24 claim against Dr. Grossman in his causes of action for defamation, invasion of privacy, or

25 intentional infliction of emotional distress, applying Rule 12(b)(6) standards.

26        An essential element of a defamation or libel claim is falsity of the representation. The

27 Grossman testimony at the hearing adequately supports his professional *opinion* regarding

28 Espinoza's lack of integrity, based on his  failure to disclose a lengthy course of treatment

1  with a mental health professional amounting to a mischaracterization of that history and less

2  than forthright responses to Dr. Grossman's inquiry regarding the actual duration of the

3  counseling. Espinoza relies on CAL. CIVIL CODE § 47.5 for the proposition that

4  notwithstanding the privilege codified at Section 47(b), "one who files a complaint with a

5  peace officer's employer charging the officer with misconduct, criminal conduct or

6  incompetence may be liable for defamation if the complaint was *knowingly false* and made

7  with *spite, hatred or ill will*." Opp. 6:8-13. Dr. Grossman filed no "complaint" with Espinoza;s

8  employer and alleged none of those things, nor has Espinoza supported in any manner his

9  vague allegations of state of mind. No *prima face* factual showing adequate to pursue his

10 defamation claim against Dr. Grossman is remotely demonstrated in this case.

11     To prevail on a claim for invasion of privacy under California law, a plaintiff must plead

12 and prove: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy;

13 and (3) serious invasion of the privacy interest. Hill v. NCAA, 7 Cal.4th 1, 9, 39-40 (1994)

14 (finding student athletes's expectation of privacy was outweighed by the NCAA's legitimate

15 regulatory interest in testing for banned drugs).

16          Privacy concerns are not absolute; they must be balanced
            against other important interests. [N]ot every act which has some
17          impact on personal privacy invokes the protections of our
            Constitution. . . . [A] court should not play the trump card to
18          protect absolutely every assertion of individual privacy.

19 Mot. 11:18-20, *quoting* Hill, 7 Cal.4th at 37.

20     Whether a legally recognized privacy interest is present in a given case is a question

21 of law to be decided by the court. Hill, 7 Cal.4th at 40.   In this case, Espinoza could not

22 have any reasonable expectation of privacy in the results of Dr. Grossman's narrow

23 evaluation adequate to override the public interest fitness-for-duty purpose Dr. Grossman

24 was retained to evaluate. The results were intended to be reported to his employer and were

25 used for a public employment purpose. He fails to make any *prima facie* showing to support

26 his contention the results of the evaluation were communicated to the entire Imperial County

27 police force, let alone that Dr. Grossman was personally responsible for any such

28 dissemination. Necessarily, Espinoza's colleagues would become aware of the termination

of his employment, but he does not plead or suggest he can prove Dr. Grossman circulated his report or repeated his testimony other than to the City and Colon associated with the termination hearing.  Furthermore, although Espinoza takes issue with Dr. Grossman's Motion allusion to the Americans With Disabilities Act ("ADA") provision in the employment context, authorizing functional limitations evaluations, as additional support for the propriety of his evaluation and communications, his FAC expressly alleges he is a " 'qualified individual with a disability' as defined in § 108 of the ADA [Americans With Disabilities Act], 42 U.S.C. § 12111(8)." FAC ¶ 36.  *See* 42 U.S.C. § 12112(d)(4)(A) (providing an employer is permitted to require a medical examination and inquiry so long as such examination or inquiry is shown to be job-related and consistent with business necessity).  Dr. Grossman's communications addressed only his assessments of Espinoza's functional limitations as rendering him unfit for duty and as a person lacking in integrity.  *See* Shaddox, 110 Cal.App.4th at 1416. Finally, disclosure of employment-related health assessments are also authorized when they describe functional limitations that may "limit the patient's fitness to perform his or her present employment, provided no statement of medical cause is included in the information disclosed." CAL. CIV. CODE § 56.10(c)(8)(B).  Espinoza does not allege the scope or nature of Dr. Grossman's evaluation or communications infringed that limitation.

To prevail on a claim for intentional infliction of emotional distress, a plaintiff must plead and prove (1) extreme and outrageous conduct by the defendant (2) with the intent to cause or with reckless disregard of the probability of causing emotional distress, (3) the plaintiff suffered severe or extreme emotional distress, and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. Davidson v. City of Westminster, 32 Cal.3d 197, 209 (1982).  Espinoza's allegations of defendants' collective conduct, purportedly motivated by an intent to cause him emotional distress, are supported with respect to Dr. Grossman solely by allegations he conducted one psychological evaluation for the (legitimate) purpose of assessing Espinioza's fitness  for duty and reported his negative professional findings on that question to the City and Colon.  The element of extreme or outrageous conduct is entirely absent.

1    For all the foregoing reasons, Dr. Grossman's Motion to Dismiss is **<u>GRANTED</u>** for

2  failure to state a claim upon which relief can be granted.

3  **III.    CONCLUSION AND ORDER**

4    For all the foregoing reasons, **IT IS HEREBY ORDERED**:

5    1.    Dr. Grossman's Anti-SLAPP Motion is **<u>GRANTED</u>**.

6    2.    Dr. Grossman shall obtain a hearing date from the chambers of the

7  undersigned District Judge for a noticed Motion to recover his reasonable attorneys' fees and

8  costs as a party prevailing on an Anti-SLAPP motion.

9    3.    Dr. Grossman's Motion To Dismiss is **<u>GRANTED</u>**.

10    4.    Defendant Dr. Grossman (only) is dismissed as a party from this action, with

11  prejudice.

12    **IT IS SO ORDERED**.

13  DATED:  June 6, 2008

14

15  **HONORABLE LARRY ALAN BURNS**
United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28