1  Susan L. Oliver (SBN 160902)
   Mina Miserlis (SBN 194068)
2  **WHITE, OLIVER & AMUNDSON**
   A Professional Corporation
3  550 West C Street, Suite 950
   San Diego, California 92101
4  Telephone: (619) 239-0300
   Facsimile: (619) 239-0344
5
6  Attorneys for Defendant Ira Grossman

7

8
                    UNITED STATES DISTRICT COURT
9
                    SOUTHERN DISTRICT OF CALIFORNIA
10

11 | JOHN ESPINOZA, an individual        )  CASE NO. 07 CV 2218 LAB (RBB)
                                         )
12 |                                     )  REQUEST FOR JUDICIAL NOTICE IN
   |            Plaintiff,               )  SUPPORT OF DEFENDANT IRA
13 |                                     )  GROSSMAN'S REPLY TO PLAINTIFF'S
   | v.                                  )  OPPOSITION TO MOTION FOR
14 |                                     )  ATTORNEY'S FEES AS PREVAILING
   |                                     )  PARTY ON ANTI-SLAPP MOTION
15 | CITY OF IMPERIAL, a public entity; MIGUEL) [C.C.P. § 425.16]
   | COLON, an individual; IRA GROSSMAN, an)
16 | individual; and DOES 1-50, inclusive )  [ORAL ARGUMENT REQUESTED]
   |                                     )
17 |            Defendants.               )  Date:    August 18, 2008
   |                                     )  Time:    11:15 a.m.
18 |_____)  Judge:   Hon. Larry A. Burns
                                            Ctrm:    9
19

20 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

21      NOTICE IS HEREBY GIVEN THAT Defendant Ira Grossman hereby requests that the Court

22 take judicial notice of the following document which is subject to judicial notice and relevant to the

23 instant Reply to Plaintiff's Opposition to Motion for Attorney's Fees:

24 ///

25 ///

26 ///

27 ///

28 ///

---

REQUEST FOR JUDICIAL NOTICE RE REPLY TO OPPOSITION TO MOTION FOR ATTORNEY'S FEES    Case No. 07 CV 2218 LAB
                                                                                                (RBB)

1.    *Moreno v. City of Sacramento*, 2008 DJDAR 11629, attached hereto as Exhibit A.

Dated: August 11, 2008           WHITE, OLIVER & AMUNDSON

By: s:/Susan L. Oliver
       Susan L. Oliver
       Attorneys for Ira Grossman

# EXHIBIT A

## CIVIL PROCEDURE

*District court abuses discretion in reducing attorney fee award in civil rights case.*

Cite as 2008 DJDAR 11629

MARIO R. MORENO,
Plaintiff-Appellant,
v.
CITY OF SACRAMENTO;
MAX FERNANDEZ;
JOSHUA PINO;
JOHN VANELLA,
Defendants-Appellees,
and
VOLUNTARY DISPUTE
RESOLUTION NEUTRAL,
Defendant.

No. 06-15021
D.C. No. CV-01-00725-DFL/DAD
United States Court of Appeals
Ninth Circuit
Filed July 28, 2008

Appeal from the United States District Court for the Eastern District of California

David F. Levi, District Judge, Presiding
Argued & Submitted December 5, 2007
Submission Deferred December 5, 2007
Submitted July 28, 2008
San Francisco, California

Before: Alex Kozinski, Chief Judge, Robert E. Cowen* and Michael Daly Hawkins, Circuit Judges.

Opinion by Chief Judge Kozinski

COUNSEL

Andrea M. Miller, Nageley, Meredith & Miller, Inc., Sacramento, California, for the appellant.
Thomas A. Cregger, Randolph Cregger & Chalfant LLP, Sacramento, California, for the appellees.

OPINION

KOZINSKI, Chief Judge:
We consider various issues pertaining to the district court's award of attorneys' fees under 42 U.S.C. § 1988.

Facts

Moreno sued the City of Sacramento and several other defendants, alleging that they violated his civil rights by seizing and destroying his property without due process. After lengthy pretrial proceedings and a previous appeal, a jury awarded Moreno $717,000 in compensatory and punitive damages. Moreno's principal trial counsel, Andrea Miller, sought an award of attorneys' fees under 42 U.S.C. § 1988. Miller requested $704,858.07 for herself and her staff, including compensation for 1,973.6 hours of her own time, at a rate of $300 per hour. This request excluded around 9 percent of the total hours actually spent on the case.

The district court reduced the hours further, concluding that around a quarter to a third of the time spent on research, appeal and trial preparation and half the time spent on investigation was unnecessary. The district court also reduced Miller's hourly rate to that of a paralegal for the time she spent summarizing depositions. Finally, the district court reduced Miller's hourly rate from $300 to $250 an hour. The resulting award was $428,053.00, around 40 percent lower than requested.

Analysis

Lawyers must eat, so they generally won't take cases without a reasonable prospect of getting paid. Congress thus recognized that private enforcement of civil rights legislation relies on the availability of fee awards: "If private citizens are to be able to assert their civil rights, and if those who violate the Nation['s] fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court." S. Rep. No. 94-1011, at 2 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5908, 5910.[1] At the same time, fee awards are not negotiated at arm's length, so there is a risk of overcompensation. A district court thus awards only the fee that it deems reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The client is free to make up any difference, but few do. As a practical matter, what the district court awards is what the lawyer gets.

In making the award, the district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases, *City of Riverside v. Rivera*, 477 U.S. 561, 579-80 (1986), and avoiding a windfall to counsel, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984) (quoting S. Rep. No. 94-1011, at 6 (1976)). The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less.

In this case, the district court used the lodestar method to calculate fees. Under this method, a district court must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation. *See Blum*, 465 U.S. at 895. The district court may then adjust upward or downward based on a variety of factors. *Hensley*, 461 U.S. at 434. The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client. *Id.* We review the district court's calculation of the reasonable hours and hourly rate for abuse of discretion. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 977-78 (9th Cir. 2008).

When the district court makes its award, it must explain how it came up with the amount.

The explanation need not be elaborate, but it must be comprehensible. As *Hensley* described it, the explanation must be "concise but *clear*." 461 U.S. at 437 (emphasis added). Where the difference between the lawyer's request and the court's award is relatively small, a somewhat cursory explanation will suffice. But where the disparity is larger, a more specific articulation of the court's reasoning is expected. See *Bogan v. City of Boston*, 489 F.3d 417, 430 (1st Cir. 2007). We review the legal principles underlying the fee award de novo. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1148 (9th Cir. 2001).

1. Reduction for Duplicative Work: Plaintiff requested fees for 227.9 hours of research, and the district court awarded fees for 171 hours. The district court found the hours requested to be excessive, suggesting that some of the research was duplicative because counsel spent substantial time preparing motions and briefs dealing with similar issues.

The court may reduce the number of hours awarded because the lawyer performed unnecessarily duplicative work, but determining whether work is unnecessarily duplicative is no easy task. When a case goes on for many years, a lot of legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even last month's, research: C a s e s are decided; statutes are enacted; regulations are promulgated and amended. A lawyer also needs to get up to speed with the research previously performed. All this is duplication, of course, but it's *necessary* duplication; it is inherent in the process of litigating over time. Here, there was a previous appeal (of the district court's grant of summary judgment) which would have added to the delay and rendered much of the research stale. One certainly expects *some* degree of duplication as an inherent part of the process. There is no reason why the lawyer should perform this necessary work for free.

It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

The district court has a greater familiarity with the case than we do, but even the district court cannot tell by a cursory examination which hours are unnecessarily duplicative. Nevertheless, the district court can impose a small reduction, no greater than 10 percent–a "haircut"–based on its exercise of discretion and without a more specific explanation. Here, however, the district court cut the number of hours by 25 percent, and gave no specific explanation as to which fees it thought were duplicative, or why. While we don't require the explanation to be elaborate, it must be clear, and this one isn't. Plaintiff's counsel had already cut her fees by 9 percent, so an additional 25 percent cut would amount to over one third. The court has discretion to make such an adjustment, but we cannot sustain a cut that substantial unless the district court articulates its reasoning with more specificity. We therefore conclude that the district court's explanation is insufficient to sustain a 25 percent cut based on duplication.

Plaintiff also requested fees for 266.6 hours of preparation for the first two trial dates, July 2002 and February 2005, without indicating how much time was spent preparing for each date. Plaintiff requested fees for 340.7 hours for the third trial date, May 2005. The district court awarded the full hours for the third trial date, but reduced the hours for the first two dates by half, to 133.3. As with the research hours, the cut here is substantial, amounting to 20 percent of the total fees billed for trial, in addition to the 9 percent already cut by plaintiff's counsel.

The district court did not explain the necessity or degree of the cut, other than to say that the amount of time plaintiff's counsel spent was "excessive." We also find it curious–and somewhat arbitrary–that the district court simply cut the costs of preparation for the first two trials by 50 percent. The first two trial dates were three years apart; the time spent preparing for the first trial would be of relatively little use by the time the case was actually presented to the jury, so it is difficult to understand how a cut of those fees would be justified, much less a cut of a full 50 percent. The second and third trial dates were only about three months apart, so it is possible there was some duplication. After all, duplication always happens when a task is started, stopped and then taken up again later. But necessary duplication–based on the vicissitudes of the litigation process–cannot be a legitimate basis for a fee reduction. It is only where the lawyer does *unnecessarily* duplicative work that the court may legitimately cut the hours.

Of course, the court might have some specific reason for believing that work is excessive or duplicative, but it must explain why. We cannot sustain a 50 percent cut, over and above the 9 percent cut plaintiff's counsel already imposed on herself, without a clear explanation that we can review. The opaque explanation provided here is an insufficient basis for the district court's Draconian cut.

The district court awarded fees for 180 hours of time spent preparing the earlier appeal. Plaintiff requested 269.3 hours. We "look more closely" at fee awards involving appeals, *Suzuki v. Yuen*, 678 F.2d 761, 762-63 (9th Cir. 1982), and can find no justification for a cut of 33 percent, on top of plaintiff's counsel's own cut. The district court noted that plaintiff's counsel spent twice as long on the appeal than on the summary judgment, but this does not mean the additional time spent on appeal was unjustified; after all, plaintiff lost claims at summary judgment that he won on appeal. More fundamentally, preparing summary judgment motions and appeals are not commensurate tasks, though they have some elements in common. What matters is whether spending more time winning on appeal than losing on summary judgment was an imprudent use of hours. The district court points to nothing

to support the conclusion that it was.

Cutting fees for "duplication of effort" appears to have been an easy way for the district court to reduce an award it may have felt was too high. But if the court believes the overall award is too high, it needs to say so and explain why, rather than making summary cuts in various components of the award. While we accord deference to the district court's explanation of why a requested fee is excessive, we can only do so if the district court provides an explanation that we can meaningfully review. Findings of duplicative work should not become a shortcut for reducing an award without identifying just why the requested fee was excessive and by how much. As the reduction passes well beyond the safety zone of a haircut, which plaintiff's counsel seems to have given herself already, the district court's justification for the cuts must be weightier and more specific.

2. Interviews and Investigation: For many of the same reasons, the district court failed to adequately justify its reduction of the time spent performing interviews and investigation, from 137.3 hours to 68.7 hours. This 50 percent reduction is not supported by the district court's cursory explanation. The district court apparently rejected defendant's argument for the cut–that the interviews and investigation were unnecessary because much of the information was not used at trial–and held that the work was "appropriate." But the court then concluded that counsel "spent an unreasonable amount of time engaged in this activity," and that "[t]his time should be reduced by 50%," without further explaining this dramatic reduction. *See Gates* v. *Deukmejian*, 987 F.2d 1392, 1400 (9th Cir. 1993) (as amended) ("the use of percentages" does not "discharge[ ] the district court from its responsibility to set forth a 'concise but clear' explanation of its reason for choosing a given percentage reduction"). While we do not require hour by hour explanations from the district court, the conclusory finding of the court here does not allow for meaningful appellate review.

3. Impermissible Methodologies: The hourly rate for successful civil rights attorneys is to be calculated by considering certain factors, including the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases. *See Hensley*, 461 U.S. at 430 n.3 (citing *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). Here, the district court properly considered the difficulty of trying the case, the rates charged by other attorneys in similar lawsuits, the skill of plaintiff's counsel, that plaintiff obtained excellent results and that counsel was to be compensated only if the lawsuit was successful. The district court suggested that an appropriate rate in light of these factors would be $300 an hour. So far, so good.

But the district court went on to consider impermissible factors. The district court reduced the hourly rate from $300 an hour to $250 an hour, in part because it thought that other firms could have staffed the case differently. The court speculated that other firms would have used a less skilled attorney, rather than the lead counsel, to perform document review. While it is appropriate to consider the skill required to perform a task, *Hensley*, 461 U.S. at 430 n.3, the district court may not set the fee based on speculation as to how other firms would have staffed the case.

The cost effectiveness of various law firm models is an open question,[2] and it is by no means clear whether a larger law firm would have billed more or less for the entire case.     The district court may have been right that a larger firm would employ junior associates who bill at a lower rate than plaintiff's counsel, but a larger firm would also employ a partner–likely billing at a higher rate than plaintiff's counsel–to supervise them. And the partner in charge would still have had to familiarize himself with the documents, a step that plaintiff's counsel avoided by reviewing the documents herself. Moreover, lead counsel can doubtless complete the job more quickly, being better informed as to which documents are likely to be irrelevant, and which need to be examined closely. Modeling law firm economics drifts far afield of the *Hensley* calculus and the statutory goal of sufficiently compensating counsel in order to attract qualified attorneys to do civil rights work.

The district court's inquiry must be limited to determining whether the fees requested by this particular legal team are justified for the particular work performed and the results achieved in this particular case. The court may permissibly look to the hourly rates charged by comparable attorneys for similar work, but may not attempt to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests. The difficulty and skill level of the work performed, and the result achieved–not whether it would have been cheaper to delegate the work to other attorneys–must drive the district court's decision.

The court also erred by applying what appears to be a de facto policy of awarding a rate of $250 an hour to civil rights cases. At the fees hearing, the district court noted that "300 an hour is a fairly big step for me, and I think for the court generally" and that "the court has pretty much held the line at 250 [an hour] for the past ten years." While the district court's final fee order does not reiterate this reasoning, an effort to adhere to this de facto policy probably influenced the final rate awarded, which was $250 an hour. Nothing else supports the $50 an hour reduction. District judges can certainly consider the fees awarded by other judges in the same locality in similar cases. But adopting a courtwide policy--even an informal one–of "holding the line" on fees at a certain level goes well beyond the discretion of the district court. One problem with any such policy is that it becomes difficult to revise over time, as economic conditions change; here the rate apparently hadn't changed for 10 years, and even a $50 increase in the hourly rate was considered a "big step . . . for the court generally." Unless carefully administered and updated, any such policy becomes a straitjacket. More fundamentally, such a policy–no matter how well intentioned or administered–is inconsistent

with the methodology for awarding fees that the Supreme Court and our court has adopted. The district court's function is to award fees that reflect economic conditions in the district; it is not to "hold the line" at a particular rate, or to resist a rate because it would be a "big step." If the lodestar leads to an hourly rate that is higher than past practice, the court must award that rate without regard to any contrary practice.

The district further erred by double counting the reduction in hourly rate for some tasks; such double counting is impermissible. See Cunningham v. County of Los Angeles, 879 F.2d 481, 489 (9th Cir. 1988). It is possible, of course, for a district court to reduce both the hours and hourly rate awarded for some tasks. But the district court must exercise extreme care in making such reductions to avoid double counting. Here, the district court reduced the reasonable hourly rate from $300 to $75 an hour, the paralegal rate, for 2 hours spent summarizing depositions, based on its conclusion that summarizing depositions was simple enough for a paralegal to perform. But the district court then used the simplicity of summarizing depositions to justify its reduction in the reasonable hourly rate for the remainder of the case from $300 to $250 an hour. Thus, the district court double counted its reduction for summarizing depositions: Each hour spent summarizing depositions was already reduced to $75 an hour, so there was no reason to reduce the overall rate. The district court may properly use the simplicity of a given task as justification for a reduction in the rate for the hours spent performing that task or as justification for a reduction in the overall rate, but not both.

\* \* \*

The district court has discretion to determine the appropriate fee award, because its familiarity with the case allows it to distinguish reasonable from excessive fee requests. But gut feelings are not enough; if the district court is going to make substantial cuts to a winning lawyer's fee request, it needs to explain why with sufficient specificity that the lawyer can meaningfully object and we can meaningfully review the objection. We can't defer to reasoning that we can't review; if all the district court offers is a conclusory statement that a fee request is too high, then we can't tell if the court is applying its superior knowledge to trim an excessive request or if it is randomly lopping off chunks of the winning lawyer's reasonably billed fees.

We are well aware that awarding attorneys' fees to prevailing parties in civil rights cases is a tedious business. And it may be difficult for the district court to identify the precise spot where a fee request is excessive. But the burden of producing a sufficiently cogent explanation can mostly be placed on the shoulders of the losing parties, who not only have the incentive, but also the knowledge of the case to point out such things as excessive or duplicative billing practices. If opposing counsel cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, it should normally grant the award in full, or with no more than a haircut.

The district court's fee award is vacated and the case is remanded with instructions that the court enter a new fee award consistent with this opinion.

VACATED AND REMANDED.

---

* The Honorable Robert E. Cowen, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

[1] Congress emphasized the importance of attorneys' fees in cases seeking injunctive relief, where there is no monetary light at the end of the litigation tunnel: "If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the Federal courts." S. Rep. No. 94-1011, at 3 (1976), as reprinted in 1976 U.S.C.C.A.N. 5908, 5910.

[2] Several courts have struggled with this issue. Some have opined that "[n]o rule of court should force a trial attorney to assign the duties of assembling documents and files for trial to an underling upon pain of not being paid for the work," M.S.R. Imports, Inc. v. R.E. Greenspan Co., Inc., 574 F. Supp. 31, 34 (E.D. Pa. 1983), or noted that litigation staffed only by senior attorneys might reduce costs, Soc'y for Good Will to Retarded Children, Inc. v. Cuomo, 574 F. Supp. 994, 999 (E.D.N.Y. 1983), vacated on other grounds, 737 F.2d 1253 (2d Cir. 1984); see also United States v. City & County of San Francisco, 748 F. Supp. 1416, 1432 (N.D. Cal. 1990) (noting that the "the efficacy of the pyramidal staffing pattern is a matter of some debate"), remanded in part on other grounds by Davis v. City & County of San Francisco, 976 F.2d 1536, 1548 (9th Cir. 1992).

Other courts have adhered more to the pyramid structure in measuring fee awards. See, e.g., Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001) ("A claim by a lawyer for maximum rates for telephone calls with a client, legal research, a letter concerning a discovery request, the drafting of a brief, and trial time in court is neither fair nor reasonable. Many of these tasks are effectively performed by administrative assistants, paralegals, or secretaries."); Bee v. Greaves, 669 F. Supp. 372, 377 (D. Utah 1987), rev'd in part on other grounds, 910 F.2d 686 (10th Cir. 1990) (reducing overall rate awarded because less experienced attorneys could have performed much of the work); Mautner v. Hirsch, 831 F. Supp. 1058, 1076 (S.D.N.Y. 1993), rev'd in part on other grounds, 32 F.3d 37 (2d Cir. 1994) (reducing lodestar for using senior attorneys when junior attorneys and paralegals were available).